326 F.3d 1042
 Douglas HARIK; Kyle Staples; Roxanna Escalante; Nance Contreras; Patricia Guthrie; Raymond Richardson; Karen Chavez; Kim Sheffield, Plaintiffs-Appellants,
v.
CALIFORNIA TEACHERS ASSOCIATION; Franklin McKinley Education Association; South San Francisco Teachers Association; Los Angeles County Education Association; Saddleback Valley Education Association; Dinuba Teachers Association; William in his Official Capacity, Superintendent, Board of Education, Yuba City Unified School District; Larry in his Capacity as Superintendent, Franklin McKinley Elementary School District; Richard Rigg, in his Capacity as Superintendent, South San Francisco Unified School District; Donald in his Capacity as Superintendent, Los Angeles County Office of Education; Peter in his Capacity as Superintendent, Saddleback Valley Unified School District; Libia in her Official Capacity as Superintendent, Board of Education, Chula Vista Elementary School District, Dr.; Stan in his Official Capacity as Superintendent, Board of Education, Dinuba Unified School District; George in his Official Capacity as Superintendent, Chino Valley Unified School District, Dr.; Chula Vista Education Association; Association of Chino, Defendants-Appellees.
Douglas Harik; Kyle Staples; Roxanna Escalante; Nance Contreras; Patricia Guthrie; Raymond Richardson; Karen Chavez; Kim Sheffield, Plaintiffs-Appellees,
v.
California Teachers Association; Franklin McKinley Education Association; South San Francisco Teachers Association; Los Angeles County Education Association; Saddleback Valley Education Association; Dinuba Teachers Association; Chula Vista Education Association; Association of Chino; Yuba City Unified Education Association, Defendants-Appellants, and
William in his Official Capacity, Superintendent, Board of Education, Yuba City Unified School District; Larry in his Capacity as Superintendent, Franklin McKinley Elementary School District; Richard Rigg, in his Capacity as Superintendent, South San Francisco Unified School District; Donald in his Capacity as Superintendent, Los Angeles County Office of Education; Peter in his Capacity as Superintendent, Saddleback Valley Unified School District; Libia in her Official Capacity as Superintendent, Board of Education, Chula Vista Elementary School District,
Dr.; Stan in his Official Capacity as Superintendent, Board of Education, Dinuba Unified School District; George in his Official Capacity as Superintendent, Chino Valley Unified School District, Dr., Defendants.
Douglas Harik; Kyle Staples; Roxanna Escalante; Nance Contreras; Patricia Guthrie; Raymond Richardson; Karen Chavez; Kim Sheffield, Plaintiffs-Appellees,
v.
California Teachers Association; Franklin McKinley Education Association; South San Francisco Teachers Association; Los Angeles County Education Association; Saddleback Valley Education Association; Dinuba Teachers Association; Chula Vista Education Association; Association of Chino, Defendants, and
William in his Official Capacity, Superintendent, Board of Education, Yuba City Unified School District; Larry in his Capacity as Superintendent, Franklin McKinley Elementary School District; Richard Rigg, in his Capacity as Superintendent, South San Francisco Unified School District; Donald in his Capacity as Superintendent, Los Angeles County Office of Education; Peter in his Capacity as Superintendent, Saddleback Valley Unified School District; Libia in her Official Capacity as Superintendent, Board of Education, Chula Vista Elementary School District, Dr.; Stan in his Official Capacity as Superintendent, Board of Education, Dinuba Unified School District; George in his Official Capacity as Superintendent, Chino Valley Unified School District, Dr., Defendants-Appellants.
 No. 01-15590.
 No. 01-15688.
 No. 01-15705.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 2002.
 Filed April 15, 2003.
 
 COPYRIGHT MATERIAL OMITTED Mark J. Beutler, National Right To Work Legal Defense Foundation, Inc., Springfield, VA, for the plaintiffs-appellants.
 John M. West, Bredhoff & Kaiser, P.L.L.C., Washington, DC, and Jeffrey B. Demain, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, for the appellees-cross-appellants.
 Appeal from the United States District Court for the Northern District of California; Charles A. Legge, District Judge, Presiding. D.C. No. CV-00-00776-CAL.
 Before SCHROEDER, Chief Judge, B. FLETCHER and KOZINSKI, Circuit Judges.
 
 
 1
 ORDER WITHDRAWING OPINION, FILING OPINION AND DENYING REHEARING AND OPINION
 
 ORDER
 
 2
 The panel opinion filed August 1, 2002, is withdrawn and the attached Opinion is ORDERED filed.
 
 
 3
 The panel as constituted above has otherwise voted to deny the petition for rehearing and the petition for rehearing en banc.
 
 
 4
 The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App. P. 35(b).
 
 
 5
 The petition for rehearing and petition for rehearing en banc are DENIED.
 
 OPINION
 
 6
 SCHROEDER, Chief Judge.
 
 
 7
 The most significant issue we must decide in these consolidated appeals is what financial information unions must provide to non-members, in an agency shop, in order to support the amount of the agency fee. See Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). We specifically address whether the statement of the union's expenditures benefitting all members of the bargaining unit and hence chargeable to non-members must always be an audited statement. The district court held that it must be audited. The smallest of the defendant unions in this case, the Dinuba Teachers Association (DTA), challenges that ruling, contending that unaudited statements signed under penalty of perjury, coupled with an opportunity to examine the union's checkbook, suffice.
 
 
 8
 We hold that, while a formal audit is not required, the union must provide a statement of its chargeable and nonchargeable expenses, together with an independent verification that the expenses were actually incurred. We reverse the district court to the extent that its ruling is inconsistent with our holding. We also reverse the district court's ruling that the school superintendents are liable for any deficiencies in the union's Hudson notice, because under the law of this circuit the employer is not responsible for ensuring the accuracy of the Hudson notice before deducting agency fees from non-members' pay. See Foster v. Mahdesian, 268 F.3d 689, 694 (9th Cir.2001). We otherwise affirm.
 
 I. Facts and Procedural History
 
 9
 Plaintiffs are non-union-member teachers in eight California school districts that have entered into agency fee agreements with the local teachers' unions. Under the agency fee agreements, the school districts deduct "agency fees" from the pay of any non-union-member employee within the bargaining unit represented by the local union and remit those fees to the local union. Those fees compensate the union for its efforts on behalf of all employees in the bargaining unit for activities such as collective bargaining, contract administration, and grievance adjustment. Those fees are known as "chargeable expenditures." See Ellis v. Broth. Ry. Clerks, 466 U.S. 435, 437, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) (approving the collection of such fees from non-members). The union may not, however, charge nonmembers fees to pay for those union activities "not sufficiently related to collective bargaining to justify their being imposed on dissenters," such as member-only services and political activities. Id. at 447, 104 S.Ct. 1883. These are known as "nonchargeable expenditures". Id.
 
 
 10
 Plaintiffs brought an action in federal court against the superintendents of their school districts, their respective local unions, and the California Teachers Association (CTA) alleging that the process by which the agency fees were deducted from their paychecks violated the standards enunciated by the Supreme Court in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). In Hudson, the Supreme Court addressed the procedures that unions must follow in informing non-members about the agency fees and in responding to their objections to the calculation of the fees. The Court held that the union must provide adequate information about its expenses and a means to challenge their validity. The union must give non-members "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Id. at 310, 106 S.Ct. 1066. Plaintiffs in this case contended that the local unions failed to provide an adequate explanation of their fees because they did not provide non-members with audited financial statements. Plaintiffs also challenged CTA's notice of arbitration procedures, as well as the procedures themselves, on the ground that the unions rely on inadequate evidence of their chargeable expenditures in fee arbitrations. Plaintiffs sought certification of plaintiff classes on the audit and arbitration procedure issues, certification of a statewide plaintiff class on the arbitration notice issue, and certification of defendant classes of all California school districts and all local unions.
 
 
 11
 The district court certified plaintiff classes for each of the school districts in which the named plaintiffs were employed, but refused to certify a statewide plaintiff class to challenge the adequacy of the Hudson notice and refused to certify any defendant classes. The district court entered summary judgment in the plaintiffs' favor on the audit issue, and it entered summary judgment in the defendants' favor on the arbitration notice and procedure challenges.
 
 
 12
 Plaintiffs appeal the grant of summary judgment to the defendants on the arbitration issues, as well as the district court's refusal to certify the statewide plaintiff class or any defendant classes. The school superintendent defendants cross-appeal, challenging the district court's certification of the plaintiff classes and the court's holding that the school superintendents are liable for notice violations committed by the local unions. The union defendants also cross-appeal, challenging the district court's certification of the plaintiff classes and the court's ruling that even the smallest local union, DTA, must provide audited financial statements.
 
 
 13
 We reverse the district court's grant of summary judgment to plaintiffs as to DTA, insofar as the district court required DTA to provide more than an independent verification that its claimed expenses were actually incurred. We reverse the district court's ruling that the school superintendents were liable for any deficiencies in the union's Hudson notice, because the school superintendents were not responsible for ensuring that the union had complied with Hudson before deducting agency fees from plaintiffs' pay. See Foster, 268 F.3d at 694. Otherwise, we affirm.
 
 
 14
 II. Whether All Locals Must Provide Audited Statements
 
 
 15
 At the beginning of each school year, each feepayer teacher represented by a CTA-affiliated local receives a notice on CTA letterhead explaining the purpose of agency fees and the manner in which the unions calculate those fees. Attached to the CTA notice are audited financial statements for the national union and CTA, and some type of financial disclosure for the particular local union representing the recipient teacher's bargaining unit. Under a policy adopted by CTA in 1986, shortly after the Hudson decision, if the local union's total estimated annual revenue from member dues and agency fees is $100,000 or more, then the local union's financial disclosure must be in the form of a financial statement audited by an outside CPA. If the local union's estimated annual revenue is less than $100,000 but at least $50,000, then the financial disclosure can be simply reviewed by an outside CPA or audited by CTA's staff auditors. If the local union's estimated annual revenue is less than $50,000, the policy requires only that the local union provide feepayers access to the local union's check register and cancelled checks and provide copies of two forms, one required by IRS and the other by the California Public Employment Relations Board, signed by union officials under penalty of perjury, summarizing the local union's chargeable and non-chargeable expenditures.
 
 
 16
 The district court held that, under Hudson, each local union, regardless of size, must provide its members with audited financial statements indicating their chargeable and non-chargeable expenditures. The district court relied on our decisions in Prescott v. County of El Dorado, 177 F.3d 1102 (9th Cir.1999), vacated, 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807, reinstated in pertinent part, 204 F.3d 984 (9th Cir.2000). In that case, we held that a state union and its local affiliate were required to provide financial statements that had been subjected to "some auditor verifiable methodology" in order to provide feepayers a "reasonable opportunity to gauge whether the money taken from them is being spent on chargeable expenses." Id. at 1108-09. The district court appears to have interpreted Prescott to require all local unions to provide audited financial statements as part of their Hudson notice to feepayers.
 
 
 17
 In Prescott, however, we noted that accountants can provide three levels of scrutiny of financial documents. Id. at 1106. In the lowest level, "compilation", the accountant simply prepares a financial statement, relying on the union's records, without expressing any opinion as to the accuracy or completeness of the statement. Id. (citing Larry P. Bailey, Miller GAAS Guide 14.19-14.20 (1999)). The intermediate level, a "review", comes with the accountant's limited expression of assurance, examining records and, in reliance on the representations of the union's financial officers, stating that the accountant "is not aware of any material modifications that should be made to the financial statement" in order for it to comply with generally accepted accounting principles. Id. at 1107 (citing Bailey at 14.25-14.28). An "audit", the highest level of scrutiny, requires the accountant to examine the union's financial recording and control procedures, examine a sample of evidence supporting the amounts listed in the financial statement, confirm inventories, and verify accounts receivable. Id. (citing Bailey at 14.25-14.26, 11.05-11.06). Audits themselves can vary in procedure and extent, and therefore involve varying degrees of certainty. Id. (citing Bailey at 9.05-9.07).
 
 
 18
 In Prescott, we did not hold that "a separate verified audit" is always required. Id. at 1108. We held some independent verification must be provided: "[W]hat is required is a real independent verification of the financial data in question to make sure that expenditures are being made the way the union says they are." Id. at 1107; see also Gwirtz v. Ohio Educ. Ass'n, 887 F.2d 678, 682 (6th Cir.1989) (holding that Hudson does not require union to provide the highest level of audit, but only an independently verified financial statement sufficient to allow feepayers to gauge the propriety of the agency fee); Andrews v. Educ. Ass'n of Cheshire, 829 F.2d 335, 340 (2d Cir.1987) (holding that Hudson requires the auditor, not to verify the proper categorization of expenditures as chargeable or nonchargeable, but merely to "ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses"). Insofar as the district court's order requires that the local unions provide more than a threshold level of independent verification that fees are not being used for non-chargeable expenditures, it is in conflict with our holding in Prescott.
 
 
 19
 This is not to say that the practice of the local unions in this case with revenues of less than $50,000 meets the requirements of Prescott and Hudson. The smallest local unions provide their feepayers with financial statements prepared only by union officials, and attested to only by those individuals, albeit under penalty of perjury. No outside individual reviews the accuracy of those financial statements. In addition, the checkbook and canceled checks to which the union provides access are only part of the information required to verify the financial statements; the unions do not provide feepayers access to other financial records, such as bills or inventories. The small local union's practice does not meet the requirement of Hudson and Prescott to provide its feepayers with either the full financial material necessary to verify, or an independently sanctioned verification of, the local union's chargeable and non-chargeable expenditures.
 
 
 20
 The union defendants contend that the smallest local unions should be excused from the independent verification requirement because the cost associated with such verification is disproportionately large when compared to their union's fee revenue. We have already held, however, that union costs do not trump non-members' First Amendment rights. As we stated in Prescott, "[e]xcessive cost cannot form the basis for allowing the union or the government to avoid Hudson's requirement that the procedures used by the union to allocate bargaining and administrative costs be carefully tailored to minimize the intrusion on the nonmembers' rights." Prescott, 177 F.3d at 1108 (quoting Andrews, 829 F.2d at 339). However, adequate disclosure under Hudson need not require substantial expense. See Hudson, 475 U.S. at 307 n. 18, 106 S.Ct. 1066. We are confident that smaller unions can devise flexible and creative "auditor verifiable methodolog[ies]", appropriately tailored to provide their nonmembers with a reasonable opportunity for meaningful verification, without depleting the union coffers. See Prescott, 177 F.3d at 1108-09; Hudson, 475 U.S. at 306-07, 106 S.Ct. 1066. For the smallest affiliates, providing financial reports along with full and fair access to bills, check stubs, canceled checks, account balances, and related materials may be more cost-efficient than an external review; we need not dictate the particular procedure as long as it is sufficiently reliable to ensure that a nonmember can independently verify that the union spent its money where it claimed that it did. The district court did not err in holding that the financial information provided by the DTA was inadequate. It erred only in requiring more than adequate accessible information using an auditor verifiable methodology that could verify DTA's expenditures.
 
 III. Superintendents' Liability
 
 21
 The district court entered a judgment against the school superintendent defendants on the audit issue, holding them liable along with the unions for the unions' failure to provide audited financial statements to non-members. On cross-appeal, the school superintendent defendants challenge the district court's ruling, relying on this court's recent decision in Foster v. Mahdesian, 268 F.3d 689 (9th Cir.2001), in which we held that an employer does not become liable for a union's breach of Hudson's requirements unless and until that employer takes some adverse action against the feepayer, beyond the mere deduction of agency fees. Id. at 694. Such adverse action would include discipline or termination for non-payment of agency fees. See Knight, 131 F.3d at 817 (holding that duty to ensure proper Hudson notice arises "at the time the union seeks to take action against a nonmember for failure to pay the agency fee"). Under Foster, the superintendents have no responsibility to ensure the adequacy of the union's Hudson notice before withholding agency fees from non-members' pay. The district court therefore erred in entering judgment against the school superintendents, and we vacate that portion of the district court's decision.
 
 
 22
 IV. Challenge to the Arbitration Procedures and Notice
 
 
 23
 Hudson requires that the union provide feepayers an explanation of the basis of its fee and an expeditious means for feepayers to challenge the calculation in front of an impartial decision-maker. Hudson, 475 U.S. at 310, 106 S.Ct. 1066. CTA, in the Hudson notice sent to all feepayers of CTA-affiliated locals, explained that the amount of the agency fee was based on the most recent audited financial statements available for the state and national unions, and that the local unions charged a fee equivalent to the percentage of the state union's chargeable fees minus five percent. The notice explained that the local unions calculated their fee in this way because they believed that the percentage of the local's actual chargeable expenditures, a statement of which was attached to the notice, was at least equal to, and usually significantly higher than, the state union's chargeable percentage. This belief is sometimes called the "local union presumption." See Prescott, 177 F.3d at 1108. The notice also explained that the local unions had, in years past, successfully justified calculating their fee under this presumption by presenting evidence of the actual expenditures of several representative local unions, thereby supporting the "local union presumption" on which their fee calculation was based. The notice explained that feepayers could request a refund of the nonchargeable portion of the fee and could challenge the calculated chargeable fee in arbitration by completing and returning a form. The notice said, in relevant part:
 
 
 24
 The law allows chargeable agency fee estimates to be based on the most recent fiscal year for which audited figures are available. The California Teachers Association and the National Education Association made calculations regarding their estimated chargeable and nonchargeable expenditures for the 1999-00 school year based on audited financial statements from the 1997-98 school year, the most recent fiscal year for which such statements are available. These summaries are attached and include a full explanation regarding how the calculations were made. Under these calculations, the actual chargeable agency fee for CTA for the 1997-98 year is 68.1% and the actual chargeable agency fee for NEA for the 1997-98 year is 61.68%. These figures will be the chargeable percentages for 1999-00. In order to reduce the possibility of having to send additional rebate checks if the arbitrator adjusts the chargeable figure, CTA and NEA will pay fee objectors an additional rebate "cushion" of 5% of the fee.
 
 
 25
 If you do not receive, concurrent with this letter, contrary notification from your local CTA chapter, your chapter will be adopting CTA's chargeable agency fee figure, with the 5% cushion, as its own for 1999-00. This is based on the presumption that the local's percentage of expenditures for representational purposes is at least as great, if not much greater, than this CTA percentage. Many chapters, in fact, spend all their local fees for chargeable purposes. CTA's use of the presumption has been upheld in twelve annual agency fee arbitration hearings based on evidence presented regarding the expenditures of a judgmental and/or random sample of CTA locals. Regardless of whether the presumption is adopted, however, each local chapter will provide its fee payers with a separate accounting of the chapter's chargeable and nonchargeable expenditures.
 
 
 26
 If, after reading the enclosed information, you wish to object to your fee being spent for nonrepresentational activities, and to request that you receive a rebate for the nonchargeable amount, you must complete the enclosed form.... In addition, if you wish to challenge the calculation for CTA's, NEA's, or your local chapter's chargeable expenditures in an arbitration hearing, you must check the appropriate boxes on the form.
 
 
 27
 A form allowing feepayers to express their desire for a rebate and for arbitration was enclosed with the notice, as were the audited financial statements of CTA and NEA, and the financial disclosure of the particular feepayer's local.
 
 
 28
 The plaintiffs do not contend that they were denied the right to challenge the fee. The notice explains their right to request arbitration. Instead, they contend that the local unions violated their arbitration rights by presenting evidence supporting the local union presumption and thereby, according to the plaintiffs, relying on evidence insufficient to justify the fee charged. As the district court held, "this is a question of the quality of the evidence presented, to be determined by the arbitrator, and does not raise issues of constitutional law." Accordingly, if the plaintiffs wish to challenge the arbitrator's reliance on the proffered evidence, they should do so by seeking review of the arbitrator's decision. In addition, the Hudson notice is not invalid because it describes the union's intention to present a particular kind of evidence. The notice accurately describes the feepayers' right to challenge the fee and evidence at arbitration. The district court did not err in granting summary judgment to the defendants on the plaintiffs' arbitration procedure and arbitration notice claims.
 
 V. Class Certification
 
 29
 Plaintiffs sought certification of four classes: a class of plaintiffs consisting of all feepayer teachers employed in bargaining units represented by CTA-affiliated locals, a class of plaintiffs consisting of all feepayer teachers who received the Hudson notice from CTA, a class of defendants consisting of all school superintendents in districts whose teachers were represented by CTA-affiliated locals, and a class of defendants consisting of all CTA-affiliated locals. The district court certified only eight plaintiff classes, consisting of the feepayers in each of the eight districts in which one of the named plaintiffs was employed. Plaintiffs, on appeal, challenge the district court's refusal to certify the statewide plaintiff class of feepayers who received the CTA notice and its refusal to certify any defendant classes. Defendants, on cross-appeal, challenge the district court's certification of the eight plaintiff classes.
 
 
 1. The Certified Plaintiff Classes
 
 
 30
 Defendants challenge the district court's certification of eight plaintiff classes, contending that the named plaintiffs are not adequate class representatives as required by Rule 23(a)(4), because their litigation goals conflict with the interests of some class members, and that the certified classes do not meet the numerosity requirements of Rule 23(a)(1). See Fed.R.Civ.P. 23(a)(1), (4).
 
 
 31
 The classes comprised of agency feepayers in the Dinuba, Franklin McKinley, and Chino teachers' associations contain only seven, nine, and ten members, respectively. The Supreme Court has held fifteen is too small. General Tel. Co. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The certification of those classes must be vacated on numerosity grounds. The defendants acknowledge that the classes comprised of agency feepayers in the Yuba City, Saddleback Valley, and South San Francisco districts present a closer question because the members exceed sixty, and the defendants never presented any reason to the district court why they did not meet the numerosity requirement. The plaintiffs point out that the small amounts involved in the individual claims and judicial economy can be considered. Here the plaintiffs seek only prospective relief and so the interests of judicial economy are served by the certifications. We have no basis on which to invalidate the remaining certifications on numerosity grounds.
 
 
 32
 The defendants abandoned their numerosity challenge in the district court, and we do not ordinarily consider on appeal issues not raised below. United States v. Stenberg, 803 F.2d 422, 431 (9th Cir.1986). In support of their adequacy argument, the defendants cite Gilpin v. Am. Fed'n. of State, County, & Mun. Employees, 875 F.2d 1310, 1313 (7th Cir.1989), where the Seventh Circuit found that plaintiffs who sought damage remedies from a union that allegedly failed to comply with Hudson could not be certified as a class because at least some class members were probably "free rider[s]" who wished to receive the services of a healthy union while paying as little as possible for them. No such concerns can be present here, where the plaintiffs seek only injunctive relief requiring the unions to comply with their constitutional duties as set forth in Hudson. We therefore do not need to decide whether we agree with the Seventh Circuit that free riders create a conflict of interest within a proposed class. The district court's plaintiff class certification must be affirmed.
 
 
 33
 
 2. The Refusal To Certify a Statewide Plaintiff Class
 
 
 
 34
 The district court refused to certify the proposed class of all feepayers who receive the CTA notice. Because we hold that the district court correctly entered summary judgment in favor of CTA on the arbitration notice claim, we need not decide whether the district court should have certified a plaintiff class.
 
 
 3. Refusal To Certify Defendant Classes
 
 
 35
 Plaintiffs sought certification of a defendant class of all CTA-affiliated local unions and a defendant class of all school superintendents whose employees were represented by those unions. The named defendants, the local unions and school superintendents of the districts in which the plaintiffs work, would serve as representatives for classes comprised of local unions and school superintendents in districts other than those in which the plaintiffs teach. Rule 23(b)(2) permits the certification of a class if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The eight plaintiff classes have taken no action with respect to the proposed defendant classes. Indeed, plaintiffs have no relationship whatsoever to the proposed defendant classes, because plaintiffs are employed only by the school districts whose superintendents are named defendants. The district court did not abuse its discretion in holding that the proposed defendant classes should not be certified under Rule 23(b)(2).
 
 VI. Conclusion
 
 36
 For the foregoing reasons, we vacate the decision of the district court that DTA must provide an audited financial statement to its members as part of the Hudson notice, and we remand for modification of the judgment against the Dinuba Teachers Association. We vacate the certification of the classes of teachers in the Dinuba, Franklin McKinley, and Chino districts. We also vacate the district court's grant of summary judgment against the school superintendents on the audit claim and remand for entry of judgment dismissing the action against them. We affirm the judgment of the district court in all other respects.
 
 
 37
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.