**Sandra R. SWANSON, Plaintiff,**

v.

**UNIVERSITY OF HAWAII PROFESSIONAL ASSEMBLY; and Mary Alice Evans, Comptroller, State of Hawaii, Defendants.**

**No. 02–00552–HG–LEK.**

United States District Court,
D. Hawai'i.

June 4, 2003.

R. Patrick McPherson, Honolulu, Milton L. Chappell, W. James Young, National

Right to Work Legal, Defense Foundation Inc, Springfield, VA, for Sandra R. Swanson, plaintiff.

Wade C. Zukeran, T. Anthony Gill, Gill & Zukeran, Honolulu, Sarah R. Hirakami, Department of the Attorney, General–State of Hawaii, Employment Law Division, James Earl Halvorson, Jonathan A. Swanson, Department of the Attorney, General–State of Hawaii, Department of Education, Honolulu, HI, for University of Hawaii Professional Asembly, Evan S. Dobelle, President, University of Hawaii, J.R.W. Sloane, Vice President for Administration and Chief Financial Officer, University of Hawaii, Mary Alice Comptroller, State of Hawaii, and named as Rule 19(a) defendant, defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GILLMOR, District Judge.

On October 1, 2002, Plaintiff Sandra R. Swanson filed a Verified Class Action Amended Complaint seeking relief under 42 U.S.C. § 1983. Plaintiff alleges that the actions of Defendant University of Hawaii Professional Assembly ("UHPA"), and Defendant Mary Alice Evans, Comptroller of the State of Hawaii ("Evans"), violate Plaintiff's and potential class members' First and Fourteenth Amendment rights to the United States Constitution. The UHPA is alleged to have failed to follow the United States Supreme Court decision in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Plaintiff maintains that UHPA provides inadequate information to nonmembers prior to making union payroll deductions pursuant to Hawaii Revised Statutes § 89–4, in violation of *Hudson*.

■ In *Abood v. Detroit Board of Education*, 431 U.S. 209, 234–36, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Supreme Court held that, while nonunion members could be compelled to contribute to their share of costs for collective bargaining, they could not be compelled to contribute funds used to finance ideological causes. If a union does finance ideological or political causes with nonmember's dues and the nonmember finds these causes objectionable, such financing violates the nonmember's First Amendment right to be free from compelled speech as a requirement for holding a government job.[1] "For at the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State." *Id.* at 234–35, 97 S.Ct. 1782 (footnote omitted). Consequently, in *Hudson*, the Supreme Court set forth the minimum procedural protections for the collection of agency fees (or union dues without an ideological component) from a nonmember of the union.

This Order addresses Plaintiff's Motion for Preliminary Injunction filed on October 16, 2002, and opposed by Defendant UHPA on January 3, 2003, and by Defendant Evans on January 4, 2003. Plaintiff filed Replies to Defendants' Oppositions on January 10, 2003. Oral argument was held on the Motion for Preliminary Injunction and a Motion for Class Certification on January 22, 2003. On January 27, 2003, the Court issued an Order Granting Plaintiff's Motion for Class Certification.

The Court permitted the parties to file supplemental briefing on the Ninth Circuit's decision in *Cummings v. Connell*,

---

1. This view has long been held. Thomas Jefferson stated that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical." *Abood*, 431 U.S. at 235 n. 31, 97 S.Ct. 1782 (Thomas Jefferson as quoted in I. Brant, *James Madison: The Nationalist* 354 (1948)).

316 F.3d 886 (9th Cir.2003). UHPA filed a *Cummings* brief on January 28, 2003 and Plaintiff filed a *Cummings* brief on January 31, 2003. Plaintiff also sent to the Court and opposing counsel letters dated April 15, April 22, and May 14, 2003, that provided updates to pending cases from other jurisdictions.

The Court finds a reasonable likelihood that Plaintiff will succeed on the merits and that the balance of the hardships tilts in favor of the Plaintiff, therefore, Plaintiff's Motion for a Preliminary Injunction is GRANTED.

## BACKGROUND

Plaintiff Sandra R. Swanson is employed by the University of Hawaii at the Maui Community College as an instructor. (Verified Class Action Amended Complaint ("Amended Complaint"), ¶ 6). Under the terms of her employment Plaintiff is represented by a union, Defendant University of Hawaii Professional Assembly ("UHPA") in Collective Bargaining Unit 7 (Faculty), although she is not a member of UHPA. *Id.* Defendant UHPA is an "employee organization" as defined by Haw.Rev.Stat. § 89–2. (Amended Complaint, ¶ 7).

On January 27, 2003, the Court certified the following class:

> all former, current, and future University of Hawaii employees employed in Collective Bargaining Unit 7, as certified by the Hawaii Labor Relations Board, who are, have been, or will be represented exclusively for purposes of collective bargaining by UHPA, but who are not, were not, or will not be members of UHPA, and were (after 31 August 2000), are, and/or will nevertheless be subjected to involuntary seizures of an amount equivalent to regular union dues or agency fees for the benefit of UHPA.

Defendant Mary Alice Evans is Comptroller of the State of Hawaii. (*Id.*, at ¶ 8). As Comptroller, Evans is responsible for issuing wages and processing deductions from wages for Plaintiff and other employees of the State and the University of Hawaii. (*Id.*). Since at least August 31, 2000, pursuant to Haw.Rev.Stat. § 89–4, Defendant Evans has been deducting agency fees equal to full union dues on behalf of UHPA from the wages of Plaintiff and other nonunion employees of Collective Bargaining Unit 7. (*Id.*, at ¶ 22).

On or about December 22, 2000, Plaintiff and other similarly situated employees received materials from UHPA setting forth its policy to "permit[ ] non-members of UHPA Bargaining Unit 7 to request a rebate of the pro rata portion of the annual dues equivalent." (*Id.*, at ¶ 23). On or about December 17, 2001, Plaintiff and other similarly situated employees received a new set of materials from UHPA setting forth its policy to "permit[ ] non-members of UHPA Bargaining Unit 7 to request a rebate of the pro rata portion of the annual dues equivalent." (*Id.*, at ¶ 25).

Plaintiff complains that these notices are deficient under *Hudson, supra.* (*Id.*, at ¶ 29). Specifically, Plaintiff maintains that the notice for the 2002–2003 fee year did not provide:

1. notice of the amount of the agency fee;

2. the major categories of UHPA's expenditures;

3. an explanation of the allocation of UHPA's expenditures between chargeable and nonchargeable components;

4. an allocation of UHPA expenditures into understandable, useful and functional categories, so as to allow nonnmembers to make a reasonable determination as to whether they are being charged only for those expenses affirmatively related to collective bargaining, contract administration and grievance adjustment;

5. an independent, certified public accountant's audit and opinion letter of UHPA's allocation of chargeable and nonchargeable expenses;

6. an independent, certified public accountant's audit and opinion letter of the actual portion of the agency fees seized for the benefit of UHPA's affiliate, the NEA;

7. a reasonably prompt rebate of the nonchargeable amount or reduction of the agency fee to the chargeable amount, instead the notice states that any rebate will not be received until 60 days after the end of the fiscal year—approximately a year after the request for a rebate must be received by the union; and

8. a reasonably prompt opportunity to challenge the amount of the agency fee before an impartial decisionmaker without the requirement to first take the objection to an internal union appeal process or satisfy other burdensome challenge requirements.

(Memo. in Support of Preliminary Inj., pp. 4–5; Amended Complaint, ¶¶ 27, 29).

Plaintiff alleges, now on behalf of a class, that she suffers deprivation of her constitutional rights as a result of the union's failure to provide an adequate notice under *Hudson*. As a result, Plaintiff seeks to enjoin Defendants from taking any action to demand and/or collect from Plaintiff and class members any agency fees and from taking any other action to enforce Hawaii Revised Statutes § 89–4(a)[2] until such time as an agency fee

procedure, adequate under *Hudson*, is approved by the Court.

## ANALYSIS

 The propriety of preliminary injunctive relief requires consideration of two factors: (1) the likelihood of the plaintiff's success on the merits; and (2) the relative balance of potential hardships to the plaintiff, defendant, and the public. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839–40 (9th Cir.2001). These two factors have been incorporated into a test under which the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *American Tunaboat Assoc. v. Brown*, 67 F.3d 1404, 1411 (9th Cir.1995). These formulations are not different tests, but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 965 (9th Cir. 2002) (citations omitted). Additionally, "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992). The movant has the burden of proving each element of either test. *Prescott v. County of El Dorado*, 915 F.Supp. 1080, 1084 (E.D.Cal.1996).

**2.** Section 89–4(a) concerns payroll deductions. It provides, in part, that:

[T]he employer shall deduct an amount equivalent to the regular dues from the payroll of every nonmember employee in the appropriate bargaining unit, and shall remit the amount to the exclusive representative; provided that the deduction from the payroll of every nonmember employee shall be made only for an exclusive repre-

sentative which provides for a procedure for determining the amount of a refund to any employee who demands the return of any part of the deduction which represents the employees' pro rata share of expenditures made by the exclusive representative for activities of a political and ideological nature unrelated to the terms and conditions of employment.

## I. *Probability of Success on the Merits*

Plaintiff argues that she will prevail on at least one of her eight theories maintaining that the 2002–2003 *"Hudson* notice" was legally inadequate. Defendants argue that their *Hudson* notice is adequate and that Plaintiff cannot establish irreparable harm.

■■■ Nonunion public employees can be compelled to pay their *pro rata* share of the costs of collective bargaining, contract administration and grievance adjustment. *See Abood,* 431 U.S. at 221–22, 97 S.Ct. 1782. Before a union or public employer is entitled to take any action to enforce such an obligation, however, it must comply with "the constitutional requirements for the ... collection of agency fees." *Hudson,* 475 U.S. at 310, 106 S.Ct. 1066. The requirements include "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.*

### A. *Sufficiency of Notice on the Amount of the Fee*

■■ The first four of Plaintiff's theories regarding the inadequacy of the *"Hudson* notice" concern the information provided by UHPA regarding the amount of the fee. The purpose of a *Hudson* notice "is to provide the employee with sufficient information to gauge the propriety of the union's fee." *Knight v. Kenai Peninsula Borough Sch. Dist.,* 131 F.3d 807, 813 (9th Cir.1997), *cert. denied,* 524 U.S. 904, 118 S.Ct. 2060, 141 L.Ed.2d 138 (1998) (internal quotation omitted). Inadequate explanation amounts to "a constitutional violation." *Hudson,* 475 U.S. at 309 n. 22, 106 S.Ct. 1066.

Neither defendant disputes that the *Hudson* notice provided for the 2002–2003 fee year fails to provide a notice of the amount of the fee. For this reason alone the Court could find a constitutional violation under *Hudson.* There are, however, additional reasons for a court to find that the *Hudson* notice here is legally insufficient.

■■ As noted earlier, *Abood* permits "a public employer to designate a union as the exclusive collective-bargaining representative of its employees, and to require nonunion employees, as a condition of employment, to pay a fair share of the union's cost of negotiating and administering a collective-bargaining agreement." *Hudson,* 475 U.S. at 301, 106 S.Ct. 1066. Collective bargaining related expenses are "chargeable expenses" that a nonmember must pay while political or ideological expenses are "nonchargeable expenses".

■■ UHPA's *Hudson* notice fails to identify the chargeable expenses. (Decl. of Sandra Swanson, filed 10/17/02, "Swanson Declaration", Exh. A(1) at 1, in Support of Plaintiff's Motion for Preliminary Injunction). Such a failure renders the disclosure inadequate under *Hudson. Id.* at 307, 106 S.Ct. 1066 ("An acknowledgment that nonmembers would not be required to pay any part of 5% of the Union's total annual expenditures was not an adequate disclosure of the reasons why they were required to pay their share of 95%.")

Plaintiff's additional *Hudson* notice concerns regarding the detail and specificity of the notice are of concern to the Court as well. In that UHPA's *Hudson* notice fails to provide the amount of the fee and fails to identify chargeable activities, the Court finds a likelihood that Plaintiff will succeed on the merits.

### B. *Adequacy of Audit*

Plaintiff's fifth and sixth issues concern the audit or other independent verification

of both UHPA's and the National Education Association's ("NEA") chargeable or nonchargeable expenses. According to Plaintiff, because a portion of UHPA's nonmember dues is paid by UHPA to the NEA, which itself has both chargeable and nonchargeable activities, an audit or other independent verification of NEA's spending is necessary to prevent nonmember dues from paying for any portion of the NEA's political activities. Plaintiff maintains that the audit or independent verification contained in the 2002–03 fund year *Hudson* notice was inadequate.

In *Harik v. California Teachers Assoc.*, 326 F.3d 1042, 1046 (9th Cir.2003), the Ninth Circuit Court of Appeals held that "while a formal audit is not required, the union must provide a statement of its chargeable and nonchargeable expenses, together with an independent verification that the expenses were actually incurred." Here, Section 3 of UHPA's Dues Rebate Procedure for Non–Members provides that the "most recent audit report shall be also made available upon written request." (Swanson Declaration, Exh. A(2), p. 1). The problem is that UHPA does not categorize its expenses into those that are chargeable and nonchargeable, therefore, an independent verification cannot be performed. In addition, requiring nonmembers to request the audit violates *Hudson*. "Offering to send an audit upon request does not allow plaintiffs to gauge the propriety of the union's fee, nor does it tell the fee payers that the union actually spent the money the way that it claimed." *Cummings v. Connell*, 177 F.Supp.2d 1060, 1067 (E.D.Cal.2001) (internal quotation omitted), *affirmed* 316 F.3d 886, 891 (9th Cir.2003) ("we agree with the district court that the representation in the June 1999

notice that the figures had been audited was not sufficient under *Hudson* ").

■■■ The allegations here describe two problems with the audit performed for the 2002–03 fund year: there was no independent verification of chargeable and nonchargeable expenses and the audit must be requested by nonmembers.[3] Based on these two allegations, there is a likelihood that Plaintiff may prevail on her theory that UHPA does not provide nonmembers with an adequate audit.

### C. Availability of a Prompt Rebate

■■■ The seventh issue raised by Plaintiff concerns whether UHPA provides a prompt rebate of nonchargeable expenses to nonmembers. According to the pleadings, UHPA presently sends a rebate for nonchargeable expenses to requesting nonmembers "within 60 days" of the end of the fiscal year, August 31, 2003, or sometime before October 31, 2003. (Swanson Decl., Exh. A(1)). UHPA, however, required that requests for a rebate be received by UHPA on or before November 7, 2002. A delay of nearly a year before the rebate is sent is not permissible under *Hudson*. "A forced exaction followed by a rebate equal to the amount improperly expended is thus not a permissible response to the nonunion employees' objections." *Hudson*, 475 U.S. at 305–06, 106 S.Ct. 1066.

■■■ UHPA argues that their practice of escrowing payments that are subject to a rebate does not violate *Hudson* and cite to *Grunwald v. San Bernardino City Unified School Dist.*, 994 F.2d 1370, 1375 (9th Cir.), *cert. denied*, 510 U.S. 964, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993). The Ninth Circuit, in *Grunwald*, did permit a "deduc-

---

**3.** Both of these concerns apply to the UHPA financial statement and the NEA financial statement provided to nonmembers.

tion-escrow-refund" mechanism, but not without limitations. Specifically, the Ninth Circuit cautioned that "where a deduction-escrow-refund procedure is employed, the refund procedure must be reasonably prompt; the employee must be given sufficient information from which to judge the adequacy of the refund; and, if the challenging employee so chooses, the amount of the refund must ultimately be decided by an impartial decision maker." *Id.* at 1375–76 (footnote omitted).

■ Here, there is a delay of nearly a year that Plaintiff argues can scarcely be considered "reasonably prompt." Other circuits have found the "deduction-escrow-rebate" procedure to be constitutionally impermissible because of the delay in the rebate. "[O]bjecting non-members have a right to an advance rebate of those fees which are attributable to clearly non-chargeable expenditures." *Tierney v. City of Toledo,* 917 F.2d 927, 937 (6th Cir.1990); *Tavernor v. Illinois Fed'n of Teachers,* 226 F.3d 842 (7th Cir.2000).

This Court concludes that there is a reasonable probability that the "deduction-escrow-rebate" procedure employed by UHPA would be found to be unconstitutional.

### D. *Opportunity to Promptly Challenge Amount of Fee Before an Independent Decision Maker*

Plaintiff's eighth and final basis for a preliminary injunction is the argument that the dispute resolution mechanism employed by UHPA violates *Hudson.* Plaintiff argues that *Hudson* requires a prompt opportunity to challenge the amount of the fee before an impartial decision maker and that the objection mechanism imposed by UHPA violates this mandate. Defendant UHPA argues that it provides an appropriate procedure, specifically, the Hawaii Labor Relations Board under Hawaii Revised Statutes § 89–4. Plaintiff replies that an

appeal to the Hawaii Labor Relations Board is not "reasonably prompt" as required by *Hudson. Hudson,* 475 U.S. at 307, 106 S.Ct. 1066 ("[t]he nonunion employee ... is entitled to have his objections addressed in an expeditious, fair, and objective manner.")

There is not sufficient information before the Court to decide whether the Hawaii Labor Relations Board mechanism is adequately prompt.

The Court finds that Plaintiff has a reasonable probability of success on the merits on its claims regarding the sufficiency of the notice, the adequacy of the audit, and the availability of a prompt rebate. The Court, therefore, moves to the next prong required for a preliminary injunction—irreparable injury and balance of the hardships.

### II. *Irreparable Injury and Balance of the Hardships*

■ Plaintiff alleges irreparable injury by arguing that any violation of the *Hudson* notice requirements infringes upon her First Amendment rights. *See Hudson,* 475 U.S. at 303, 106 S.Ct. 1066. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citation omitted). The damage to Plaintiff of an inadequate *Hudson* notice is grounded in a nonunion member's right to "prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative." *Abood,* 431 U.S. at 234, 97 S.Ct. 1782.

Here, Plaintiff has filed a Declaration that she is not a member of UHPA, but has dues withdrawn from her salary from each paycheck and did not receive an ade-

quate *Hudson* notice.[4] (Swanson Decl., ¶¶ 3, 4, & 7). The Court finds that there is a possibility of irreparable injury.

■ The balance of hardships tips in Plaintiff's favor. The strong protections for First Amendment rights outweigh UHPA's short-term loss of fees and any inconvenience suffered by Evans. *See Prescott*, 915 F.Supp. at 1092.

### III. *Public Interest*

■ Defendant Evans argues that the injunctive relief requested is not in the public interest. The Sixth Circuit Court of Appeals has discussed precisely this point and concluded that the public interest is served by judicial insistence upon a constitutionally valid protective bargaining agreement. "Not only would such an agreement be in the public interest, it is constitutionally mandated by *Hudson*." *Weaver v. Univ. of Cincinnati*, 942 F.2d 1039, 1047 (6th Cir.1991). The Court finds that the public's interest in upholding first amendment freedoms of political expression favors the granting of a preliminary injunction here.

### IV. *Amount of Bond*

■ Federal Rule of Civil Procedure 65(c) requires an applicant for a preliminary injunction to post security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Plaintiff argues that a minimal bond be imposed because Plaintiff is seeking enforcement of constitutional rights pursuant to 42 U.S.C. § 1983. The Ninth Circuit does permit a waiver of the bond requirement, or a nominal bond, when requiring a security would effectively deny access to judicial review. *See People of Calif. v. The Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir.1985). The Court waives the bond requirement in this matter.

### V. *Class Notification*

The Court has received no information on the issue of class notification. The Court requires the parties to meet and confer with respect to the appropriate class notification. The Court requires that the parties submit a stipulated class notification on or before June 19, 2003. If no agreement is reached, the parties shall submit their proposed class notification, along with a short memorandum detailing why their proposed class notification is appropriate, on or before June 19, 2003.

### CONCLUSION

The Court finds that the possibility of irreparable injury and the balance of the hardships favor Plaintiff. The Court concludes that Plaintiff has demonstrated a reasonable probability of success on the merits based on the *Hudson* challenge to the amount of the agency fee, the allocation of chargeable and nonchargeable expenses, independent verification of chargeable and nonchargeable amounts and a prompt rebate of nonchargeable expenses.

The Motion for a Preliminary Injunction is GRANTED.

Defendants are preliminarily enjoined from taking any action to demand and/or collect from Plaintiff and class members, by any means, agency fees and from taking any other action to enforce Hawaii Revised Statutes § 89–4(a), until a mechanism for withdrawing agency fees that is in compliance with *Hudson* is devised by the parties and approved by the Court.

The parties are ORDERED to submit their proposed notice to class members,

---

**4.** Plaintiff's problems with the *Hudson* notice are those eight issues previously addressed.

either stipulated or not, on or before June 19, 2003.

IT IS SO ORDERED.