**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIE BERNADETTE MENDIONDO,
a/k/a Seal 3,

   *Plaintiff-Appellant,*

  v.

CENTINELA HOSPITAL MEDICAL
CENTER, a/k/a Seal A; TENET
HEALTHCARE CORPORATION, aka
Seal 3

   *Defendants-Appellees.*

No. 06-55981

D.C. No.
CV-03-05757-TJH

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Argued and Submitted
February 15, 2008—Pasadena, California

Filed April 1, 2008

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

3343

**COUNSEL**

Gerald M. Serlin (briefed and argued), Douglas G. Benedon (briefed); Marcus A. Mancini (briefed), Sherman Oaks and Woodland Hills, California, for the appellant.

Jennifer Blair (briefed); Susan S. Azad (briefed and argued), Los Angeles, California, for the appellees.

**OPINION**

CALLAHAN, Circuit Judge:

Marie Bernadette Mendiondo appeals from the district court's order dismissing her complaint. Mendiondo worked as

a nurse at Centinela Hospital Medical Center ("CHMC") and alleged that, following her complaints regarding false billing and reimbursement practices and substandard patient care, she was wrongfully terminated in violation of the Federal False Claims Act ("FCA") (31 U.S.C. § 3730(h)), the California False Claims Act ("CFCA") (California Government Code § 12653(b)), California Health and Safety Code § 1278.5, and the public policies embodied by these laws.

This appeal requires that we decide whether a claim for wrongful termination under the FCA and CFCA, brought in federal court, must meet the notice pleading standard in Federal Rule of Civil Procedure 8(a) or the heightened pleading standard in Rule 9(b). We hold that the Rule 8(a) standard applies. Because Mendiondo's complaint, though inartfully drafted, meets the Rule 8(a) notice pleading standard with respect to all of her claims, we reverse and remand.

## I.  BACKGROUND

### A.  Factual History[1]

Mendiondo began her nursing career in 1975 and specialized in critical care. In 2000, she accepted a nursing position in the cardiovascular department at CHMC. Mendiondo detected certain practices at CHMC that were intended to inflate Medicare reimbursements and alleges that she was investigating these practices. She alleges, for example, that one of the doctors at CHMC ordered and performed numerous unnecessary cardiac catheterizations, including repeat catheterizations on the same patients. Additionally, Mendiondo claims that the hospital insisted on implanting single ventricular pacemakers, even when patients needed biventricular pacemakers, because the single pacemakers resulted in higher

---

[1]The following facts are taken from Mendiondo's complaint. In reviewing a motion to dismiss, we accept the alleged facts as true. *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1164 n.1 (9th Cir. 2007).

Medicare reimbursements. Mendiondo asserts that CHMC also obtained reimbursement for more catheterization and radiologic procedures than were actually performed by having billing personnel manually change the billing records. Further, Mendiondo alleges the hospital manipulated the length of time it kept patients on observation status or as inpatients in order to maximize Medicare reimbursements, without regard to the medical necessities and in violation of Medicare reimbursement guidelines.

Mendiondo further alleges that from the time she started working there, CHMC pressured her to cut costs and reduce services. For example, she asserts that CHMC refused to use the safest drug for heart attacks because of cost reasons and used outdated cardiac equipment.

In 2001, Mendiondo informed the Chief Executive Officer ("CEO") of CHMC, Harry Koening, that her supervisors expected her to engage in actions that were below the standard of care, would put her nursing license in jeopardy, and could lead to civil and criminal violations. In November 2001, Mendiondo started reporting to a new supervisor, Ziporah Frankel, who demanded that Mendiondo cut costs or be fired. When Mendiondo objected that the cost-cutting measures would jeopardize patient care, Frankel instructed her to follow the measures regardless.

On August 19, 2002, CHMC terminated Mendiondo. CHMC explained that the termination was the result of Mendiondo's inadequate job performance. Mendiondo believes CHMC terminated her because she demanded that minimum state and federal standards of health care be maintained, and because of her investigation into facts relating to CHMC's submission of false claims and false records to the government.

### B. Procedural History

On August 13, 2003, Mendiondo and two colleagues filed this action against CHMC, Tenet Healthcare Corporation ("Tenet"), and three other associated health care groups.[2] The complaint alleged causes of action for (1) violations of the FCA and CFCA; (2) retaliation in violation of the whistle-blower provisions in the FCA and CFCA; (3) retaliation in violation of the California Health and Safety Code Section 1278.5; and (4) wrongful termination in violation of the public policies embodied in these laws.

Pursuant to 31 U.S.C. § 3730(b), which governs private actions under the FCA, plaintiffs filed the complaint under seal and served a copy on the federal government. The government declined to intervene, the court unsealed the complaint, and plaintiffs served CHMC and Tenet.

Plaintiffs stipulated to dismiss with prejudice the FCA and CFCA violation claims, leaving their retaliation and wrongful termination claims. CHMC then moved to dismiss the action under Federal Rules of Civil Procedure 8(e), 9(b), and/or 12(b)(6). In their opposition, plaintiffs argued that they had properly pleaded all of their remaining claims, and, in the alternative, requested leave to amend any pleading deficiencies. The district court granted the motion to dismiss without discussion and without indicating whether Mendiondo had leave to amend. Mendiondo filed a timely notice of appeal from the order. A judgment, however, was never entered.

## II. STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim pursuant to Rule 12(b)(6) and for failure to allege fraud with particularity pursuant to Rule 9(b). *United States ex rel. Lee*

---

[2]Mendiondo's colleagues do not join in this appeal.

*v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001).

## III.   JURISDICTION

**[1]** We have jurisdiction over appeals from "all final decisions" of the district court. 28 U.S.C. § 1291. The district court granted defendants' motion to dismiss, disposing of all the claims in plaintiffs' complaint, and did not address plaintiffs' request for leave to amend. The court, however, did not enter final judgment. An order dismissing all of the claims in a complaint, but not the action itself, is not a final, appealable order. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000). "However, if it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable." *Id.* (internal citations and quotation marks omitted). We must decide whether the court intended its order to be final.

**[2]** By not addressing plaintiffs' request for leave to amend, the district court's order "necessarily entailed a denial of the [request] and a determination . . . that the pleading could not possibly be cured by the allegation of other facts." *Id.* (internal citation and quotation marks omitted). Accordingly, we infer that the district court intended to make the dismissal final for purposes of § 1291. *Id.*

The district court entered the order of dismissal on June 28, 2006, and Mendiondo filed a notice of appeal on July 13, 2006, within the 30-day period for filing as prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A). Accordingly, Mendiondo filed a timely notice of appeal.

Thus, we conclude that this Court has jurisdiction over the appeal.

## IV. DISCUSSION

### A. Rule 8(a) Notice Pleading Applies to FCA Retaliation Claims[3]

**[3]** The parties dispute whether a FCA retaliation claim must meet the notice pleading standard in Rule 8(a) or the heightened pleading standard in Rule 9(b). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) applies to all civil claims except those containing averments of "fraud or mistake," which must be pleaded with particularity under Rule 9(b). Fed. R. Civ. P. 8, 9. The Supreme Court has narrowly construed Rule 9(b) to apply only to the types of actions enumerated in the rule— those alleging fraud or mistake—and has not extended the heightened pleading standard to other legal theories. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (declining to apply Rule 9(b) to claims for violations of 42 U.S.C. § 1983 or employment discrimination claims).

**[4]** Because the FCA is an anti-fraud statute and requires fraud allegations, complaints alleging a FCA violation must

---

[3]We assume for purposes of this appeal that the same analysis applies to the FCA and CFCA claims. The parties argued below and on appeal that the same analysis applies to both claims because the CFCA is patterned after the FCA. *See, e.g., California v. Altus Fin., S.A.*, 116 P.3d 1175, 1184 (Cal. 2005). We note, however, that the CFCA appears limited to false claims submitted to the State of California and might not include the types of federal Medicare claims alleged by Mendiondo. *See* Cal. Gov't. Code § 12653(b) (prohibiting retaliation against an employee investigating or disclosing a false claim); *id.* § 12650(b)(1) (defining false "claim" as a demand for money from the state or a political subdivision). Because the parties have not raised this issue, we do not address it here. *See Harik v. Cal. Teachers Ass'n.*, 326 F.3d 1042, 1052 (9th Cir. 2003) (noting that "we do not ordinarily consider on appeal issues not raised below"); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.") (citation omitted).

fulfill the requirements of Rule 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). In this case, however, we are presented only with Mendiondo's FCA retaliation claim, not a FCA violation claim. In the only federal appellate decision addressing the pleading standard for a FCA retaliation claim, the First Circuit concluded that, unlike a FCA violation claim, a FCA retaliation claim "does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238 n.23 (1st Cir. 2004). We agree.

The elements differ for a FCA violation claim and a FCA retaliation claim. To state a claim for a FCA violation, a plaintiff must allege that the defendant actually violated the FCA by knowingly submitting a false claim or providing faulty goods to the government. *See* 31 U.S.C. § 3729(a) (describing acts that constitute violations of the FCA). In contrast, to state a FCA retaliation claim, a plaintiff must show that he or she suspected that the defendant submitted a false claim—not that the defendant actually submitted one. *See Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416-17 (2005).

A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity. *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). As is clear from the elements of the claim, an employer does not face liability for the suspected or actual fraud; it faces liability for a retaliatory act against the investigating employee. The emphasis of the claim is on the employee's protected action and whether the employer retaliated against the employee because of that action. The fact that the claim arises from an

investigation of potential fraud does not alter its nature as a retaliation claim.

**[5]** Accordingly, we hold that the heightened pleading requirements of Rule 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard.

> **B.  Mendiondo Has Stated Claims for Retaliation Under the FCA and CFCA, Retaliation in Violation of California Health and Safety Code Section 1278.5, and Wrongful Termination in Violation of Public Policy**

Where, as here, the heightened pleading standard of Rule 9(b) does not apply, the complaint "need only satisfy the Rule 8(a) notice pleading standard . . . to survive a Rule 12(b)(6) dismissal." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004). The complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964 (internal citation and quotation marks omitted). Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

### 1.   FCA and CFCA Retaliation Claims

**[6]** As noted, Mendiondo's claims for retaliation under the FCA and CFCA must allege that (1) she was engaged in protected conduct; (2) CHMC knew she engaged in such conduct; and (3) CHMC retaliated against her because of the conduct. *See Moore*, 275 F.3d at 845; *Hopper*, 91 F.3d at 1269.

**[7]** For purposes of the first element, Mendiondo engaged in protected activity if she reasonably believed that CHMC was possibly committing fraud against the government, and she investigated the possible fraud. *See Moore*, 275 F.3d at 845; *Hopper*, 91 F.3d at 1269. Mendiondo alleges that she investigated "facts relating to Tenet and CHMC's submission of false claims and false records to the government." The complaint contains examples of practices at CHMC that Mendiondo and her co-plaintiffs suspected to be fraudulent attempts to inflate Medicare reimbursements: one doctor allegedly performed numerous unnecessary catheterizations; CHMC implanted single ventricular pacemakers, even when patients needed biventricular pacemakers; and CHMC kept patients on observation status or as inpatients, without regard to medical need and in violation of Medicare reimbursement guidelines. Mendiondo also alleges that CHMC obtained reimbursement for more radiologic and catheterization procedures than were actually performed by having billing personnel manually change the billing records. Although far from a model of clarity, Mendiondo's allegations provide CHMC with notice of the potentially fraudulent practices that Mendiondo believes led to false claims.

**[8]** For the second element of her FCA and CFCA retaliation claims, Mendiondo alleges she complained to CHMC's CEO, Harry Koening, about possible "civil and criminal violations." Although vague, the reference to "civil violations" can be construed to include the suspected Medicare fraud described above. Because Mendiondo complained to Koening about the suspected civil violations, CHMC was informed of Mendiondo's protected activity.

**[9]** Finally, for the third element of her FCA and CFCA retaliation claims, Mendiondo alleges that CHMC terminated her "because of her investigation into facts relating to Tenet and CHMC's submission of false claims and false records to the government." It suffices at this pleading stage for Mendiondo to simply give notice that she believes CHMC termi-

nated her because of her investigation into the practices she specified in the complaint. *See Edwards*, 356 F.3d at 1061 (noting that discovery is "often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action").

**[10]** Although the complaint may be inartfully drawn, it nonetheless contains sufficient facts under the applicable notice pleading standards of 8(a) to survive dismissal under Rule 12(b)(6).

### 2. Claim for Retaliation in Violation of California Health and Safety Code Section 1278.5

Section 1278.5 of the California Health and Safety Code is intended to encourage medical staff and patients to notify government entities of "suspected unsafe patient care and conditions." Cal. Health & Safety Code § 1278.5(a). The statute prohibits retaliation against any employee who complains to an employer or a government agency about unsafe patient care or conditions. *Id.* § 1278.5(b)(1)(A), (g).

**[11]** In the complaint, Mendiondo identifies practices that allegedly compromised patient care, including unnecessary catheterizations, implanting single instead of biventricular pacemakers, refusing to use the safest drug for heart attacks because of cost reasons, and using outdated cardiac equipment. Mendiondo alleges she complained to CHMC's CEO and her supervisor about substandard patient care. Finally, Mendiondo alleges that CHMC terminated her "because she demanded that minimum state and federal standards of health care be maintained." The allegations contain sufficient facts under Rule 8(a) to survive dismissal under Rule 12(b)(6).

### 3. Wrongful Termination in Violation of Public Policy

[12] To establish her claim for wrongful termination in violation of the public policies embodied in the FCA, CFCA, and California Health and Safety Code Section 1278.5, Mendiondo must allege facts similar to her retaliation claims: that she was terminated based on her complaints about potentially false billing practices and/or substandard patient care. *See Haney v. Aramark Unif. Serv., Inc.,* 17 Cal. Rptr. 3d 336, 348-49 (Cal. Ct. App. 2004). As detailed above, Mendiondo alleged sufficient facts to support her retaliation claims. The same allegations support her claim for wrongful termination in violation of public policy. Accordingly, her claim should not have been dismissed.[4]

## V. CONCLUSION

We hold that the notice pleading standard in Federal Rule of Civil Procedure 8(a) applies to claims for wrongful termination under the FCA and CFCA. Mendiondo's complaint meets the Rule 8(a) standard because it contains examples of potentially false billing and reimbursement practices and substandard patient care; it indicates that Mendiondo complained to CHMC's CEO and her supervisor about these issues; and it explains that CHMC terminated her because of these complaints. These allegations sufficiently notify defendants of the

---

[4]In its motion to dismiss, CHMC argued the entire complaint is subject to dismissal because the allegations are not "simple, concise, and direct," as required by Rule 8(e) (amended 2007). Dismissal for failure to meet the standards in Rule 8(e) is appropriate only in limited circumstances where a complaint proves patently verbose, confusing, and rambling. *See Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981); *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996). Here, despite the inclusion of extraneous details, the complaint provides fair notice of the wrongs allegedly committed by defendants and does not qualify as overly verbose, confusing, or rambling. Thus, to the extent that the district court relied on Rule 8(e), dismissal was also in error.

factual basis for each of Mendiondo's retaliation and wrongful termination claims.

**REVERSED AND REMANDED.**