**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STACIE SOMERS, On Behalf of Herself and All Others Similarly Situated, *Plaintiff-Appellant*, v. APPLE, INC., *Defendant-Appellee*. | No. 11-16896 D.C. No. 5:07-cv-06507-JW OPINION |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
February 11, 2013—San Francisco, California

Filed September 3, 2013

Before: Dorothy W. Nelson, Stephen Reinhardt,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Antitrust

The panel affirmed the district court's dismissal of a putative class action against Apple, Inc., alleging antitrust violations in connection with Apple's iPod and iTunes Music Store.

The panel held that the plaintiff waived review of the district court's order denying certification of a class of indirect purchasers of the iPod because she abandoned her underlying individual claim under § 2 of the Sherman Act based on inflated iPod prices.

The panel also held that the plaintiff failed to allege sufficient facts to state antitrust claims for damages and injunctive relief. The plaintiff alleged that Apple encoded iTunes Music Store music files with its proprietary Digital Rights Management (DRM), called FairPlay, which rendered the music files and the iPod compatible only with each other. She alleged that through certain software updates, Apple excluded competitors and obtained a monopoly in the portable digital media player and  music download markets, which inflated Apple's music prices and deflated the value of the iPod.

The panel held that a monopolization claim for damages based on the theory of diminution in iPod value was barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), because

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the plaintiff was an indirect purchaser of the iPod. In addition, she lacked standing to bring this claim because she alleged that she purchased her iPod after Apple's purported anti-competitive conduct began. The panel concluded that because Apple used FairPlay from the beginning, when it first launched the iTunes Music Store, its use of subsequent software updates only served to maintain the status quo at the time of purchase, and therefore could not plausibly be the basis for diminishing the value of the iPod.

The panel held that the plaintiff failed to state a monopolization claim for damages based on overcharged music downloads because she failed to plead sufficient facts to state a plausible antitrust injury. The panel concluded that the fact that Apple continuously charged the same price for its music irrespective of the absence or presence of a competitor rendered implausible the plaintiff's assertion that Apple's software updates affected music prices.

Finally, the panel held that the plaintiff failed to state a claim for injunctive relief in the form of DRM-free music files because her alleged inability to play her music freely, on non-iPods, was not an "antitrust injury" that affected competition.

## COUNSEL

Craig Briskin (argued) and Steven A. Skalet, Mehri & Skalet, PLLC, Washington, D.C.; Helen I. Zeldes, Alreen Haeggquist, and Aaron M. Olsen, Zeldes & Haeggquist, LLP, San Diego, California, for Plaintiff-Appellant.

Craig E. Stewart (argued), Robert A. Mittelstaedt, and David C. Kiernan, Jones Day, San Francisco, California, for Defendant-Appellee.

---

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Stacie Somers (Somers) brought a putative class action against Defendant-Appellee Apple, Inc. (Apple), alleging federal and state antitrust claims. Somers seeks to represent a class of indirect purchasers of the iPod, Apple's portable digital media player (PDMP), and a class of direct purchasers of music downloaded from Apple's iTunes Music Store (iTS). She alleges that Apple encoded iTS music files with its proprietary Digital Rights Management (DRM), called FairPlay, which rendered iTS music and the iPod compatible only with each other. She further claims that through certain software updates, Apple excluded competitors and obtained a monopoly in the PDMP and music download markets, which inflated Apple's music prices and deflated the value of the iPod. Somers requests damages and injunctive relief in the form of DRM-free music files.

Somers moved to certify a class of indirect purchasers of the iPod under Federal Rule of Civil Procedure 23(b)(3), which the district court denied. After giving Somers two opportunities to amend her complaint, the district court also dismissed Somers' antitrust claims with prejudice under Federal Rule of Civil Procedure 12(b)(6). Somers appeals both rulings. We hold Somers waived review of the district court's class certification order. We further hold that Somers

failed to allege sufficient facts to state antitrust claims for damages and injunctive relief. Accordingly, we affirm.

## FACTS AND PRIOR PROCEEDING

### A. Background[1]

In January 2001, Apple introduced a software program called iTunes for personal computers. iTunes enables computer users to organize and play digital music files, and upload or "sync" the files to a PDMP. The iTunes software is pre-installed on Apple computers, and is also available to non-Apple computer users by free download. In October 2001, Apple introduced the iPod, its first PDMP, which at the time, was capable of playing only unprotected audio downloads in MP3 format.

In April 2003, Apple launched iTS, an online music store accessible only through iTunes. iTS began selling digital music tracks from major record labels for 99 cents each. iTS music files were encrypted with Fairplay at the point of purchase through iTunes. DRM is designed to restrict a consumer's use and reproduction of digital files. Major record labels required that digital music files sold by Apple through iTunes be in a protected format, but did not require Apple to restrict music files for use only with Apple products. Both iTunes and the iPod were updated to be compatible with Fairplay encryption. As a result, music purchased from iTS

---

[1] The facts are drawn from the allegations in the operative Corrected Second Amended Complaint (SAC), filed on January 25, 2011, which on a Rule 12(b)(6) motion, we accept as true and construe in the light most favorable to Somers. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).

could only be played on the iPod, and the iPod could only play music downloaded from iTS.

In November 2005, Somers purchased a 20GB iPod from a Target store, and thereafter, purchased music from iTS that was encoded with FairPlay.

## B. Somers' iPod Overcharge Claim and Motion for Class Certification

In December 2007, Somers filed her complaint against Apple on behalf of a class of indirect purchasers of Apple products (Indirect Purchaser Action). In her original complaint, Somers asserted a claim for unlawful tying under section 1 of the Sherman Act, 15 U.S.C. § 1, and monopolization claims under section 2 of the Sherman Act, 15 U.S.C. § 2, along with related state law claims. Somers alleged that Apple's FairPlay and software updates rendered iTS music incompatible with non-iPod digital media players, thereby increasing iPod demand and enabling Apple to charge supracompetitive prices for the iPod. Somers sought damages for the alleged iPod overcharge on behalf of herself and other consumers who purchased their iPod from a reseller.

In February 2008, the district court related this action to a case making similar factual allegations and claims against Apple on behalf of *direct* purchasers of Apple products (*Apple iPod iTunes AntiTrust Litigation*, No. C 05-00037 (Direct Purchaser Action)). In the Direct Purchaser Action, the district court concluded that the technological interoperability between the iPod and media sold through iTS did not constitute unlawful tying, and ordered the tying claim dismissed.

In February 2009, Somers moved to certify an injunctive and damage class of indirect purchasers of Apple's iPod under Rules 23(b)(2) and 23(b)(3), respectively.[2] The district court denied Somers' motion to certify a class of indirect purchasers of the iPod under Rule 23(b)(3), on the ground that *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), prohibits indirect purchasers from recovering for violations of federal antitrust law. The district court further ruled that even though California has enacted statutes repealing the *Illinois Brick* rule of private actions under *state* antitrust laws, certification under Rule 23(b)(3) was still inappropriate because Somers had failed to establish a reliable measure for damages in an action on behalf of indirect purchasers. The district court deferred ruling on Somers' motion for certification of the Rule 23(b)(2) injunctive class in light of the pending Direct Purchaser Action.

In July 2010, Somers filed her First Amended Complaint (FAC). Somers dropped her tying claim and brought monopolization claims under section 2 of the Sherman Act, as well as a claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq*. Somers asserted a damage claim based on two new theories: (i) inflated prices for music downloads and (ii) deflated value of the iPod. The district court dismissed the FAC with leave to amend.

---

[2] Specifically, Somers sought to certify a class with the following definition: "All persons and entities in the United States (excluding federal, state and local government entities, Apple, its directors, officers and members of their families) that from December 31, 2003 to the present ("Class Period") purchased an Apple iPod indirectly from Apple for their own use and not for resale."

## C. Second Amended Complaint

In January 2011, Somers filed the SAC, in which she dropped her damage claim based on the iPod diminution-in-value theory, and otherwise renewed her federal antitrust claims and UCL claim. In the SAC, Somers seeks to represent a class of individuals who purchased music files from iTS. Somers alleges that as a result of the FairPlay encryption, Apple achieved a monopoly in the PDMP and audio download markets. Specifically, Somers alleges that shortly after the release of iTS in April 2003, (i) Apple achieved and maintained a market share of over 70 percent of the audio download market and (ii) increased its market share of the PDMP market from 11 to 99 percent. Somers claims that Apple achieved a monopoly in both the PDMP and music downloads markets by 2004, at the latest.

Somers next alleges that Apple maintained and furthered its monopoly in these markets "through the use of software updates intended to prevent competitors from selling Audio Downloads that were compatible with iPods." SAC ¶ 90. For example, in July 2004, Real Networks introduced a technology known as Harmony, which enabled songs purchased through its online stores to be compatible with iPods and other digital media players, thereby offering an alternative to iTS. Real Networks began selling its music as low as 49 cents per track, compared to the 99 cents per track charged by Apple. In October 2004, Apple responded by updating its iPod and iTunes software to prevent songs downloaded from Real Networks' music store from being played on iPods. Somers alleges that as a result of such software updates, Apple was able to thwart Real Networks' effort to compete in the audio download market, thereby enabling Apple to continue to charge supracompetitive prices

for digital music. According to Somers, "[h]ad Apple not engaged in this anticompetitive action, it would have had to price Audio Downloads on price with Real Networks." *Id.* ¶ 66.

Somers then alleges that Apple continually issued software updates from 2005 through 2009 to prevent competitors from entering and threatening its monopolies. Specifically, Somers claims that Apple issued software updates to iTunes to block and neutralize computer programs such as JHymn, QTFairUse, PlayFair, and Requiem, which enabled users to play their iTS music on non-Apple devices. Apple also introduced software updates to prevent syncing functionality with certain non-Apple media players.

In January 2008, Amazon became the first music store to sell music files without DRM restrictions. Amazon sold over half of the more than 2 million songs in its initial catalog for 89 cents each. In January 2009, Apple announced that it would begin selling most songs through iTS without FairPlay restrictions. When Apple introduced variable pricing in 2009, and offered top-sellers for $1.29, Amazon sold many of the same tracks for 99 cents. Apple sold a few songs for 69 cents. Consumers who had previously purchased their music through iTS could "upgrade" their files to a FairPlay-free format, but only by paying 30 cents per file. By the end of March 2009, all music sold through iTS was free of FairPlay encryption.

Somers asserts that as a result of Apple's software updates and "the technological link created by FairPlay, Apple was able to preserve its monopoly in both [the PDMP and audio download] markets, charge supracompetitive prices, and restrict consumer choices." *Id.* ¶¶ 90, 94–95.

Somers claims that Apple has maintained the restriction on DRM-encoded music purchased from iTS, thereby forcing customers to pay Apple substantial sums to free their music libraries or purchase an Apple product to play their music.

Based on these allegations, Somers asserts claims for injunctive relief (Counts I, II) and damages (Count III) for violation of section 2 of the Sherman Antitrust Act, as well as a UCL claim (Count IV). The district court dismissed the SAC with prejudice, and Somers timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's denial of a motion for class certification for abuse of discretion. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). A legal error is deemed a per se abuse of discretion, *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011), while findings of fact are reviewed for clear error, *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1171–72 (9th Cir. 2012).

We review de novo the district court's dismissal for failure to state an antitrust claim under Federal Rule of Civil Procedure 12(b)(6). *Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 970 (9th Cir. 2008). Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). We have held that for pleading an antitrust claim, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "specifically abrogated the usual notice pleading rule" under Rule 8(a)(2) and *Conley v. Gibson*,

355 U.S. 41 (1957). *Rick-Mik Enters.,* 532 F.3d at 971 (citation and quotes omitted); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, *Iqbal*, 556 U.S. at 678–79. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). Nor is it enough that the complaint is "factually neutral"; rather, it must be "factually suggestive." *Twombly*, 550 U.S. at 557 n.5.

Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment," *Kendall*, 518 F.3d at 1051. "We may affirm on

any basis supported by the record, whether or not relied upon by the district court." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007).

## DISCUSSION

### I.  Class Certification of Indirect Purchasers of the iPod

Somers challenges the district court's July 2009 order denying her motion to certify a class of indirect purchasers of the iPod under Rule 23(b)(3).  Apple argues that this decision is not properly before us because Somers abandoned her underlying individual claim.  Apple is correct.

In the original December 2007 complaint, Somers sought to represent, *inter alia*, a class of indirect purchasers of the iPod damages class.  Somers' class claim was predicated on her individual claim for damages under section 2 of the Sherman Act based on inflated iPod prices.  Apple answered the original complaint in February 2008.  In her February 2009 motion for class certification, Somers sought to certify a class of indirect purchasers of the iPod only.  The district court denied that motion.  In the FAC, filed in July 2010, Somers did not renew her individual damage claim based on an overcharge iPod theory, but rather, asserted a new theory based on the *diminution* in iPod value.  Somers alleged that Apple's purported anti-competitive conduct "restricted the iPod's capability, and lessened its uses, usefulness and value to Plaintiff and the Class."  FAC ¶ 141.  Before Somers' filing of the FAC, Apple did not move to dismiss her overcharge iPod claim.  Nor did the district court dismiss Somers' individual overcharge iPod claim.  In her January 2011 SAC, Somers again changed her damage theory—this time on the basis of supracompetitive music prices.  Although

Apple, twice, expressly asserted that Somers had dropped her overcharge iPod claim, Somers did not pursue that claim or challenge Apple's assertion. *See* Mot. to Dismiss Appeal, Exh. 8 [Mot. to Dismiss FAC], at 6 ("For iPod purchasers, she drops the claim that iPod prices were supracompetitive—which the Court had ruled was not a basis for class certification.") and Exh. 12 [Mot. to Dismiss SAC], at 1 ("She now has dropped the iPod overcharge claim with which she began her suit four years ago.").

Under these circumstances, Somers has voluntarily abandoned her overcharge iPod claim. *See Lacey*, 693 F.3d at 928 ("[F]or any claims voluntarily dismissed, we will consider those claims to be waived if not repled."); *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim, and cannot raise it on appeal."). Somers had an obligation to pursue her overcharge iPod claim on an individual basis to obtain review of the district court's denial of certification on that claim. *See Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1240 (9th Cir. 1979) (finding the district court's refusal to certify the class unreviewable because plaintiff failed to prosecute the underlying individual claim following denial); *Marks v. S.F. Real Estate Bd.*, 627 F.2d 947, 949 (9th Cir. 1980) ("[P]laintiff must be willing to proceed to trial, albeit reluctantly, on his individual claim in order to obtain eventual review of the [class] decertification order.").[3]    Because

---

[3] Somers includes a section entitled "Preservation of Claims for Appeal" in her amended complaints related to her tying and overcharge iPod claims. However, these statements are not affirmative assertions of a

Somers has abandoned the individual claim for which she sought class certification, the issue of whether the district court erred in denying her motion to certify that claim for class treatment is waived.

## II. Damages Claim Based on Diminution in iPod Value

Somers also appeals the district court's December 2010 order dismissing her monopolization claim for damages based on the theory of diminution in iPod value, as alleged under Count IV of the FAC. In the FAC, Somers sought to represent a class on behalf of (i) direct purchasers of iTS music, and (ii) indirect purchasers of the iPod. Somers alleged that Apple "impaired the uses, usefulness and value of iPods purchased by Indirect Purchasers," and made iPods "less valuable to Plaintiff and the Class, because they were unable to download music tracks that would have been available from competitors at lower prices." FAC ¶ 101. Somers sought "compensatory damages on behalf of herself and all other indirect purchasers of iPods for the diminution in value to their iPods caused by Apple's restrictive 'updates.'" *Id.* ¶¶ 16, 141–42.

The district court properly dismissed this claim on the ground that it was barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The indirect purchaser rule bars suits for antitrust damages by customers who do not buy directly from a defendant, as explained by the Supreme Court in *Hanover Shoe, Inc. v. United States Machinery Corp.*, 392 U.S. 481 (1968), and *Illinois Brick*. In *Illinois Brick*, the Court held that allowing indirect purchasers to sue for

claim in a complaint, and therefore they do not serve to renew claims that she previously dropped.

damages, while refusing to allow a pass-on defense to direct purchaser plaintiffs, would create the risk of double recovery against defendants, and necessitate complex and costly inquiries into the amount of injury passed on to the plaintiffs. 431 U.S. at 730–33; *see also Del. Valley Surgical Supply Inc. v. Johnson & Johnson Health Care Sys. Inc.*, 523 F.3d 1116, 1120–21 (9th Cir. 2008) (observing that "a bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations"); *accord In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012). "The underlying purposes for the rule are (1) 'to eliminate the complications of apportioning overcharges between direct and indirect purchasers'; (2) 'to eliminate multiple recoveries'; and (3) to 'promote the vigorous enforcement of the antitrust laws.'" *In re ATM Fee Antitrust Litig.*, 686 F.3d at 748 (quoting *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208, 212, 214 (1990)).

Here, while Somers requests compensatory damages on the theory that Apple's software updates *deflated* the value of her iPod—rather than causing an inflation of initial iPod prices—the rationale under *Illinois Brick* applies equally to this type of damage claim. The plaintiff in the related Direct Purchaser Action case is seeking damages based on the same kinds of iPods that form the basis of Somers' suit here, but on the theory that the software upgrades *inflated* iPod prices. Thus, allowing Somers to sue as an indirect purchaser would lead to litigation on contradictory, duplicative theories of recovery necessitating "evidentiary complexities and

uncertainties," which the indirect purchaser rule was intended to prevent. *Illinois Brick*, 431 U.S. at 732.**[4]**

But even if *Illinois Brick* did not apply, Somers lacks standing to bring this claim under the facts alleged in the FAC. Somers alleges that she purchased her iPod in November 2005, but Apple's purported anti-competitive conduct (use of software updates) began in 2004. *See* FAC ¶¶ 12, 71–72. Apple's software updates after 2004 thus only served to maintain the status quo—*i.e.*, music downloaded from iTS can only be played on the iPod.

Somers' diminution-in-value theory is also useless by any other iPod purchaser because Somers alleges that Apple used FairPlay from the beginning, when it first launched iTS in 2003, and that the iPod was incapable of playing music from any other on-line store. *See* FAC ¶ 49 ("iPods were unable to play any file encrypted with any DRM format other than FairPlay."), ¶ 59 ("From the beginning of iTS, Apple designed the iPod's software so it could only play a single protected digital format, Apple's FairPlay-modified AAC format."). Accordingly, Apple's use of subsequent software updates only served to maintain the status quo at the time of

---

**[4]** We reject Somers' argument that she can assert a damage claim under California's UCL. Somers only seeks compensatory damages, which are not recoverable under the UCL. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.9 (9th Cir. 2011) ("Under the UCL, [p]revailing plaintiffs are generally limited to injunctive relief and restitution." (citation and quotes omitted)); *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 624 (9th Cir. 1999) ("California law is clear that §§ 17200 et seq. do not authorize a suit by a private party for damages."); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) ("A UCL action is equitable in nature; damages cannot be recovered.").

purchase, and therefore cannot plausibly be the basis for diminishing the value of the iPod.

### III. Damages Claim Based on Overcharged Music Downloads

Somers next challenges the district court's July 2011 order dismissing her music overcharge claim. In the FAC, Somers alleged an antitrust claim based on the theory that Apple's use of software updates inflated iTS music prices. The district court initially dismissed the claim with leave to amend on the ground that Somers failed to allege sufficient facts in support of her allegation that Apple's iTS pricing was supracompetitive or that the pricing of excluded competitors were competitive. The district court noted that Somers had only alleged that Apple's competitor priced music lower than did Apple. The district court also observed that Somers alleged in contradictory fashion that the prices for iTS music remained the same since Apple entered the market in 2003, including prior to purportedly obtaining a monopoly in the market, and after Apple's share declined.

Somers renewed the same claim in the SAC. The district court dismissed the claim with prejudice because Somers had not corrected the deficiencies identified in the FAC, and because Somers' claim was premised on the presumption that Apple's maintenance of its DRM-encrypted files constituted an antitrust violation—a presumption that the district court had already rejected. On appeal, Somers argues that the district court erred by (1) applying an improper proof requirement, and (2) ignoring allegations supporting her monopolization claim. Neither argument has merit.

First, Somers contends that the district court erred by requiring her to prove supracompetitive pricing. Somers is mistaken. The district court did not require her to prove, but rather, to plead the elements of a monopolization claim. Section 2 of the Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony." 15 U.S.C. § 2. To state a plausible monopolization claim under this provision requires plaintiff to show: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998 (9th Cir. 2010) (citation and quotes omitted); *accord Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996). Thus, contrary to Somers' assertion, causal antitrust injury is a substantive element of an antitrust claim, and the fact of injury or damage must be alleged at the pleading stage. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233 (9th Cir. 1974); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).

At issue here is whether Somers has pleaded sufficient facts to state a plausible antitrust injury. "Antitrust injury" means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Parsing the Supreme Court's definition of "antitrust injury," we have held that antitrust injury consists of four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.,*

*Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999); *accord Glenn Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003). With respect to the second element, "[a] plaintiff must . . . allege some credible injury caused by the unlawful conduct. There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct." *Am. Ad Mgmt.*, 190 F.3d at 1056. In addition, we have imposed a fifth element—that "the injured party be a participant in the same market as the alleged malefactors," meaning "the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Glenn Holly Entm't*, 343 F.3d at 1008 (citations and quotes omitted). A plaintiff can request treble damages for an antitrust violation under section 4 of the Clayton Act. 15 U.S.C. § 15(a).[5]

A key issue in this appeal is whether under *American Ad*'s second requirement, Somers suffered an injury caused by Apple's anticompetitive conduct. 190 F.3d at 1055. Somers alleges that she suffered injury in the form of inflated music prices. The premise of her overcharge theory is that Apple used software updates to thwart competitors (*e.g.*, Real Networks) and gain a monopoly in the music download market, which permitted Apple to charge higher prices for its music than it could have in a competitive market. Specifically, Somers alleges that if Apple had not engaged in

---

[5] We note that antitrust injury is also the threshold requirement for antitrust standing, which is required for treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15(a). *See Gerlinger v. Amazon.com, Inc., Borders Group, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (discussing the five elements of antitrust standing).

anti-competitive conduct to exclude Real Networks from the market, "it would have had to price Audio Downloads to compete on price with Real Networks."  SAC ¶ 66.

Unfortunately for Somers, her own allegations do not square with her overcharge theory.  Somers claims that the price for music downloads remained the same (99 cents) since it entered the market in 2003, *before* it obtained monopoly in the audio download market, and *after* it allegedly acquired monopoly in that market in 2004.  *See id.* ¶ 35 ("iTS initially offered over 200,000 songs from the major record labels for 99 cents each."), ¶ 46 ("Apple achieved a monopoly . . . by 2004 at the latest"), ¶ 57 (stating that Apple charged 99 cents per track in July 2004 after RealNetworks entered the market).  Moreover, with the exception of brief references to a few tracks and top-sellers, Somers does not allege that Apple's music price changed—even after Apple's alleged monopoly ended in the beginning of 2008—when Amazon began selling DRM-free music, and after Apple began selling Fairplay-free music in January 2009.  But Somers earlier alleged that if Apple had not used software updates to thwart competition, it would have had to lower the price of its music to compete with its rivals.  *See id.* ¶ 66.  Accordingly, if Somers' overcharge theory were correct, then Apple's music prices from 2004 to 2008 were supracompetitive as a result of software updates that excluded competition, and the emergence of a large seller such as Amazon would have caused iTS music prices to fall. But Somers alleges no such price reduction.  Somers' overcharge theory is thus implausible in the face of contradictory market facts alleged in her complaint.  As Somers herself acknowledges, under basic economic principles, increased competition—as Apple encountered in 2008 with the entrance of Amazon—generally lowers prices.

*See Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 895 (2007); *Barr Labs., Inc v. Abbott Labs.*, 978 F.2d 98, 109 (3d Cir. 1992). The fact that Apple continuously charged the same price for its music irrespective of the absence or presence of a competitor renders implausible Somers' conclusory assertion that Apple's software updates affected music prices. *See Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) ("On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is plausible in light of basic economic principles." (citation and quotes omitted)).[6]

Somers responds that price is only one aspect to consider in the relevant economic calculus. We agree that price is only one possible indicator in assessing competitive markets. Monopoly power may be evaluated by other factors, such as barriers to entry or structural evidence of a monopolized market. *See, e.g.*, *Harrison Aire, Inc. v. Aerostar, Int'l*, 423 F.3d 374, 381 (3d Cir. 2005); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995). But if Apple did not charge inflated prices for its music, then this fact contradicts Somers' overcharge theory, and there would be no basis for damages in the first place.[7] Somers nevertheless suggests that it is conceivable that Apple's music was not priced higher because of some other

---

[6] While Somers alleges that Apple promised to sell "some songs" for 69 cents each after Amazon began selling online music, those tracks were "few and far between." SAC ¶ 84.

[7] Somers suggests for the first time on appeal that regardless of what Apple charged, she was damaged because she was not able to purchase music at a lower price from Apple's competitor. But Somers did not assert this basis for damages below, and in any event, it is contrary to her alleged overcharge theory.

factor, such as superior product or greater efficiency. While this is certainly possible, to state a plausible antitrust injury, Somers must allege facts that rise beyond mere conceivability or possibility. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Moreover, Somers did not request further opportunity to amend her complaint or suggest facts she could allege to correct the deficiency. We are only left to speculate on what factors could have permitted Apple to charge 99 cents continuously. Under the plausibility standard, Somers must allege specific facts that raise an antitrust claim above the speculative level. *Twombly*, 550 U.S. at 555.

Based on the alleged facts, there are also other "obvious alternative explanation[s]" for the music pricing. *Twombly*, 550 U.S. at 567. For example, it might be conceivable that Apple did not charge inflated music prices, but kept the music prices low to incentivize customers to purchase the iPod, a product with a much higher return, or to use Apple products. Moreover, low pricing could be used to undercut Apple's rivals, who would then lose business, but this fact would also contradict Somers' alleged overcharge theory of antitrust injury. *See Brook Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–23, 225 (1993) (discussing elements of predatory pricing); *accord Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312, 318–19 (2007). Accordingly, when these explanations are considered, together with allegations of iTS music pricing—construed in the light most favorable to Somers—Somers' music overcharge theory "stays in neutral territory," and "without some further factual enhancement it stops short of the line between possibility and plausibility" of antitrust injury. *Twombly*, 550 U.S. at 557.

Second, in support of her overcharge theory, Somers points to allegations that Real Networks and Amazon charged lower prices when they first entered the music download market. Specifically, in the SAC, Somers alleges that Real Networks charged 49 cents per song when it first entered the market in 2004. But the bare allegation that Real Networks charged a lower introductory price does not mean that Apple charged supracompetitive prices when such variations in pricing exist even in competitive markets. Somers further points to allegations that Amazon started charging 89 cents for many of its songs in January 2008. But again, the fact that Amazon started charging 10 cents less does not, in itself, show that Apple's music prices were supracompetitive during the period of Apple's purported monopoly. In fact, the stability of Apple's pricing in the face of increased competition only undermines Somers' allegation that Apple's music prices were supracompetitive. Thus, without more, these allegations do not nudge Somers' claim of antitrust injury "across the line from conceivable to plausible." *Id.* at 570.

Although Somers' complaint leaves open the possibility that she "might later establish some set of undisclosed facts" supporting antitrust injury, that is not enough to permit the SAC to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 561 (quotes and bracket omitted). As the Supreme Court has emphasized, its insistence on specificity of facts is warranted before permitting a case to proceed into costly and protracted discovery in an antitrust case, especially where, as here, the potential expense of discovery is obviously great: Somers seeks to represent a putative class of Apple music purchasers in the entire United States over a ten year period, in a lawsuit against one of the world's largest information technology

companies, and involving billions of music purchases. *See id.* at 557–59.

Accordingly, the district court properly dismissed Somers' claim for damages based on supracompetitive music prices.

## IV.    Injunctive Claim for DRM-Free Music

Finally, Somers challenges the district court's July 2011 order dismissing her claims for injunctive relief. In the SAC, Somers asserts claims for injunctive relief for violation of section 2 of the Sherman Act (Counts I and II). Specifically, Somers requests "DRM-free versions of any audio downloads . . . purchased from Apple." SAC, Prayer ¶ F. Somers alleges that, although Apple sold DRM-free music in 2009, it charges 30 cents to "upgrade" previously purchased DRM-encoded music to FairPlay-free format. The district court dismissed Somers' claims on the basis that her claim for DRM-free music depended on an assertion of anti-competitive conduct that it had previously rejected as insufficient—namely, that Apple's encryption of FairPlay was unlawful in the first place.

Somers responds that the district court erred by narrowly construing the alleged consumer injury. Somers maintains that her claim for injunctive relief is not predicated on a tying claim, but on Apple's use of software updates, which caused her to suffer "the loss of ability to freely play her digital music purchases as she saw fit." In the SAC, Somers alleges that through the use of software updates, "Apple was able to . . . charge supracompetitive prices, and restrict consumer choices." SAC ¶¶ 90, 94–95. But limitation of consumer choice, in itself, does not amount to "antitrust injury." *See*

*Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1349 n.19 (9th Cir. 1982) ("[I]ntru[sion] upon consumers' freedom of choice by compelling the purchase of unwanted products . . . has been implicitly rejected by the Supreme Court as a sufficient independent basis for antitrust liability." (citing *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 53 n.21 (1977)).

Moreover, the SAC lacks any allegation suggesting that Somers' ownership of DRM-encoded music files, or her inability to freely play them on non-iPods, harms competition in the music download market. "Section 16 of the Clayton Act provides, in part, that '[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . .'" *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110–11 (1986) (quoting 15 U.S.C. § 26); *accord Kendall*, 518 F.3d at 1051. To obtain injunctive relief, Somers must allege facts showing that the remedy she seeks is needed to prevent a threatened "antitrust injury," meaning an "injury of the type the antitrust laws were intended to prevent"—*i.e.*, an injury to competition. *Brunswick*, 429 U.S. at 489; *see also State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997) ("[T]he primary purpose of the antitrust laws is to protect interbrand competition."); *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").

Somers does not allege any facts in the SAC purporting to show how limitation of personal choice inhibits Apple's competitors from entering the audio download market or prevents competitors from selling music online. Nor does she

explain how requiring Apple to provide DRM-free copies of music she previously purchased from iTS would enhance competition among online music sellers.  Finally, an inability to freely play her DRM-encoded music is not comparable to the loss of "free choices between market alternatives," which we recognize as antitrust injury, *Glenn Holly Entm't*, 343 F.3d at 1011 (citation and quotes omitted), because Somers' alleged limited ability to *play* her music does not relate to a restriction on her ability to *buy* music from competing online music sellers.  Somers also cannot meaningfully claim that her ownership of DRM-encoded music inhibits competition in the PDMP market, or that it restricts her choices in that market because she only seeks to represent music purchasers in the SAC.  In sum, Somers' alleged inability to play her music freely is not an "antitrust injury" that affects competition, and thus cannot serve as a basis for injunctive relief.

## CONCLUSION

For the foregoing reasons, the district court's denial of class certification and dismissal of Somers' complaint with prejudice are affirmed.

**AFFIRMED.**