**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

OCT 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: GERMAN AUTOMOTIVE MANUFACTURERS ANTITRUST LITIGATION, | No. 20-17139 |
| ------------------------------ | D.C. No. 3:17-md-02796-CRB |
| AUDUBON IMPORTS, LLC, DBA Mercedes Benz of Baton Rouge; et al., | MEMORANDUM[*] |
| Plaintiffs-Appellants, | |
| v. | |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, (BMW AG); et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Submitted October 22, 2021[**]
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  BADE and BUMATAY, Circuit Judges, and SESSIONS,*** District Judge.

Appellants, a putative class of U.S. automobile dealers (the "Direct Purchasers"), appeal the district court's dismissal of their consolidated class action complaint alleging that five German automakers and their American subsidiaries violated § 1 of the Sherman Act, 15 U.S.C. § 1.  We review the district court's decision de novo, *see Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011), and we affirm.

To survive a challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Direct Purchasers' complaint had to plead "enough facts to state a claim to relief that [was] plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint needed to answer "basic questions," like "who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

1.     The district court properly dismissed the Direct Purchasers' claim alleging that Defendants engaged in a no-arms-race conspiracy to allocate market share.  The Direct Purchasers' few specific examples of Defendants' alleged collusion were either devoid of factual development, pertinent to technology "used

***     The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

predominantly in passenger vehicles sold in Europe," or simply too narrow to establish "an overarching conspiracy" to "restrict innovation on all, or most, aspects of vehicle development." Moreover, the allegations that Defendants coordinated major product updates and refreshes "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy." *Kendall*, 518 F.3d at 1049; *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) ("In an interdependent market, companies base their actions in part on the anticipated reactions of their competitors."). Dismissal of the Direct Purchasers' claim premised on a no-arms-race to allocate market share was therefore warranted.[1]

2. The district court properly dismissed the Direct Purchasers' claim alleging that Defendants conspired to pay higher prices for steel because the complaint did not plausibly allege a credible antitrust injury. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). The Direct Purchasers alleged that they suffered antitrust injury in the form of inflated vehicle prices. But this overcharge theory is implausible because the Direct Purchasers have not

---

[1] We are not persuaded by the Direct Purchasers' argument that *Kendall* and *Musical Instruments* are inapposite because the district court did not allow limited discovery in this case. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery.").

alleged any facts suggesting that the price of Defendants' vehicles increased while the alleged steel conspiracy was in effect or decreased after it ended. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (rejecting a plaintiff's argument that she "suffered injury in the form of inflated music prices" because she did "not allege that Apple's music price changed"). Moreover, the allegation that steel manufacturers "experienced 'squeezing margins'" after the alleged conspiracy was exposed does not support the Direct Purchasers' claim, particularly given that the market for steel is distinct from the market alleged in this case.

The complaint's remaining allegations do not give rise to a plausible inference that the alleged steel conspiracy caused the Direct Purchasers to suffer antitrust injury. These allegations "could just as easily suggest rational, legal business behavior," *Kendall*, 518 F.3d at 1049, or are too speculative to support a plausible antitrust injury, *see Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1131 (9th Cir. 2015) (declining to "infer a conspiracy based on speculation"). Thus, dismissal of the Direct Purchasers' claim based on an alleged steel conspiracy was proper.

3. The district court properly dismissed the Direct Purchasers' claim alleging that Defendants conspired to not develop electric vehicles. The complaint acknowledges that three Defendants "launched plug-in/hybrid vehicles" while the alleged conspiracy was in effect. And the complaint alleges a benign explanation

4

for Defendants' conduct: "Defendants had already invested heavily in diesel engines" when the demand for low-emission vehicles began to rise. *See Name.Space, Inc.*, 795 F.3d at 1130 ("We cannot . . . infer an anticompetitive agreement when factual allegations just as easily suggest rational, legal business behavior." (internal quotation marks omitted)).

The Direct Purchasers' references to purported "plus factors" do not save their § 1 claim from dismissal. Contrary to the Direct Purchasers' argument, "common motive does not suggest an agreement." *Musical Instruments*, 798 F.3d at 1194. Defendants' conduct does not constitute an "extreme action against self-interest" because, as the complaint observes, a non-conspirator did not release its first all-electric vehicle until 2018. *Id.* at 1195 ("[E]xtreme action against self-interest . . . may suggest prior agreement [if] . . . individual action would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement."). Defendants' participation "in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *Id.* at 1196. And the Direct Purchasers offer no explanation for how alleged violations of European law, arising from cars sold in Europe, render their claims under American law and relating to cars sold in the United States plausible. Indeed, no well-pleaded facts suggest that Defendants' conduct in Europe affected American commerce. *See*

5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582 n.6 (1986) ("The Sherman Act does reach conduct outside our borders, but only when the conduct has an effect on American commerce."). Dismissal of the Direct Purchasers' claim premised on an alleged agreement to not develop electric vehicles was proper.

**AFFIRMED.**