**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 8 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NORTHBAY HEALTHCARE GROUP, INC.; NORTHBAY HEALTHCARE CORPORATION, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> KAISER FOUNDATION HEALTH PLAN, INC.; et al., <br><br> Defendants-Appellees. | No. 18-16769 <br><br> D.C. No. 3:17-cv-05005-LB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted February 3, 2020
San Francisco, California

Before: PAEZ and BEA, Circuit Judges, and JACK,** District Judge.

Dissent by Judge BEA

Plaintiffs-Appellants NorthBay Healthcare Group, Inc. and NorthBay

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Janis Graham Jack, United States District Judge for the Southern District of Texas, sitting by designation.

Healthcare Corporation (collectively, "NorthBay") appeal the district court's

dismissal of their antitrust claim under § 2 of the Sherman Act against Defendants-

Appellees Kaiser Foundation Health Plan ("Kaiser Health"), Kaiser Foundation

Hospitals, Inc. ("Kaiser Hospitals"), and The Permanente Medical Group

("Permanente") (collectively, "Defendants"). The district court dismissed

NorthBay's antitrust claim for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291. Reviewing de

novo, *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005), we

reverse.[1]

NorthBay alleges that, amid its unprecedented investment campaign to

improve its hospital facilities and services, Defendants monopolized and conspired

to monopolize the healthcare-insurance market in Solano County by injuring

NorthBay, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. NorthBay

identifies two campaigns Defendants undertook to achieve this goal. The first is

that Permanente physicians at Kaiser's trauma center instructed emergency

personnel to "steer" uninsured and indigent patients away from two Kaiser

hospitals[2] and toward NorthBay's hospitals; and to "steer" insured trauma patients

---

[1] Because the parties are familiar with the facts and procedural history, we recount only the most pertinent ones.
[2] Those hospitals are Kaiser Permanente Vallejo Medical Center and Kaiser Permanente Vacaville Medical Center, each owned and operated by Kaiser Hospitals.

away from NorthBay's hospitals and toward the same two Kaiser hospitals (the "steering" allegation). The second is that Permanente terminated a 2010 reimbursement agreement with NorthBay and began reimbursing NorthBay at less than half the previously reimbursed rate (the "reimbursement" allegation). NorthBay further alleges that with these anticompetitive acts, Defendants would have succeeded in driving out their competitor, non-party Western Health Advantage ("Western"), whose network includes NorthBay's hospitals. Such conduct, if true—as we must assume it to be, *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009)—is sufficient to survive the strictures under Federal Rule of Civil Procedure 8.

The district court dismissed NorthBay's complaint on the ground that it failed to allege four essential elements of "causal antitrust injury"—an essential ingredient to both its monopolization and conspiracy to monopolize claims. We disagree.

*Unlawful Conduct.* Contrary to the district court's conclusion, NorthBay sufficiently alleges Defendants engaged in "unlawful conduct." *See Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). NorthBay asserts Permanente's physicians at Kaiser Hospitals directed lucrative patients away from its hospitals and indigent patients towards them to drain NorthBay of its revenue. NorthBay thus goes beyond merely "recit[ing] . . . the elements" of a § 2 antitrust claim

3

because it describes the facts that form the alleged unlawful conduct. *See Iqbal*, 556 U.S. at 681. However "fanciful" these facts may seem is irrelevant. *See id.* ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"). Given that only the *claim* needs to be plausible, and not the facts themselves, we disagree with the district court's conclusion that any further factual enhancement was necessary. *See NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*, No. 17-CV-05005-LB, 2018 WL 4096399, at *7 (N.D. Cal. Aug. 28, 2018).

Similarly, the reimbursement allegations are also sufficient to meet the element of "unlawful conduct." By terminating the 2010 reimbursement agreement and reimbursing NorthBay at substantially lower rates than originally agreed upon, Defendants exposed themselves to potential liability under California law and engaged in business activities that appear contrary to its own interests down the line, unless to achieve the immediate—and anticompetitive—goal of injuring NorthBay. *See* Cal. Health & Safety Code § 1317.2a(d) (stating third party-payor must pay the "reasonable charges" of the transferring hospital); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 610–11

(1985); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).

*Injury.* NorthBay also pleads facts that are sufficient for the second element to demonstrate causal antitrust injury—that it suffered "some credible injury" caused by Defendants' unlawful conduct. *Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999). The operative complaint describes at length the financial injuries NorthBay suffered because of Defendants' alleged steering and reimbursement practices.

*Injury Flowing from Anticompetitive Conduct.* Relatedly, NorthBay has adequately alleged the third element of causal antitrust injury—that its injuries "flow[ed] from an *anticompetitive* aspect or effect of the defendant's behavior . . . ." *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) (quotation marks omitted). NorthBay's steering and reimbursement allegations caused financial injuries that go to the heart of anticompetitive conduct. Each campaign, according to NorthBay, was undertaken to prevent NorthBay from following through with "procompetitive investments in its hospital facilities and services." And NorthBay alleges that Defendants' unlawful conduct has worked because, to date, it has had to curb future investment plans, close departments, lay off employees, and reduce services available to the public. These alleged injuries to NorthBay undoubtedly "hurt competition." *See id.* As NorthBay describes it,

5

Western is Kaiser Health's "only significant healthcare insurance rival" in Solano County, and Western's ability to compete with Kaiser Health depends on consumers seeing NorthBay hospitals as favorable alternatives to Kaiser Hospitals. And the alleged injuries NorthBay has suffered because of Defendants' purportedly anticompetitive behavior has prevented NorthBay from competing with Kaiser Hospitals, and even forced NorthBay to make cutbacks that have rendered it a less desirable alternative to Kaiser Hospitals. We thus conclude that NorthBay's alleged injuries flowed from Defendants' alleged anticompetitive conduct.

*Conduct Antitrust Laws Were Meant to Prevent.* NorthBay's alleged injury also meets the fourth element of antitrust injury—that is, it was "of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1057. NorthBay's steering and reimbursement allegations were, in its view, done intentionally to prevent NorthBay from completing major investments in its facilities, which would have improved the quality of services. Such disruption could, as alleged, diminish the quality of services for the public and thus fall under the type of protection the antitrust laws were intended to afford.

*Market Participant / Inextricable Intertwinement.* Last, although the district court did not address the final element to show causal antitrust injury, we conclude the record sufficiently shows that NorthBay satisfies it. Generally, this element is

6

satisfied if the injured party shows that it "[was] a participant in the same market as the alleged malefactors," as, for example, a "consumer" or "competitor." *See Somers*, 729 F.3d at 963. Additionally, the injured party can satisfy the element by showing its injuries are "inextricably intertwined with the injury the [Defendants] sought to inflict on" marketplace participants. *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982); *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5 ("We recognize that the Supreme Court has carved a narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants.").[3]

The parties do not dispute that NorthBay was neither a consumer nor a competitor in the Solano County healthcare-insurance market, but NorthBay

---

[3] We disagree with the dissent's characterization of *McCready*. The Supreme Court began by emphasizing that the standing requirement, 15 U.S.C. § 15, "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers." *McCready*, 457 U.S. at 472 (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219 (1948)). While McCready was a health plan participant, the Court's reasoning emphasized that she was directly targeted for harm by parties seeking to injure a competitor. The Court stated that the harm to McCready was "clearly foreseeable; indeed, it was a necessary step in effecting the ends of the alleged illegal conspiracy." *Id.* at 479. Moreover, the Court provided a hypothetical to further explain its reasoning: "If a group of psychiatrists conspired to boycott a bank until the bank ceased making loans to psychologists, the bank would no doubt be able to recover the injuries suffered as a consequence of the psychiatrists' actions." *Id.* at 484 n.21. In the hypothetical, the bank is not a competitor or consumer in the psychotherapy market, but it was used to directly harm a competitor; McCready was used in a similar way. So too here—the complaint alleges that Kaiser sought to use NorthBay to harm Western.

nonetheless falls within *McCready*'s holding because its injuries are "inextricably intertwined" with an injury to Western. As alleged, Kaiser Health's one significant competitor in the Solano County healthcare-insurance market is Western. Because NorthBay is Western's Solano County in-network hospital system, any acts that injure NorthBay in turn hurt Western. Thus, Defendants sought to injure NorthBay's investment projects by steering patients and cutting reimbursement rates, which, in effect, aided its efforts to squeeze Western out of that market and maintain a monopoly. Thus, although "the goal of the [steering and reimbursement allegations] was to exclude [Western] from [the Solano County healthcare-insurance market]," NorthBay's alleged financial injuries "[were] the very means by which it [was] alleged that [Defendants] sought to achieve its illegal ends." *See McCready*, 457 U.S. at 479, 484 n.21. The Supreme Court's rule in *McCready* therefore applies.

Because we reverse the district court's dismissal of NorthBay's federal claims, on remand the district court should reconsider its decision declining to assert supplemental jurisdiction over the state-law claims. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012) (en banc).

**REVERSED** and **REMANDED.**

8

*NorthBay Healthcare Group v. Kaiser Foundation Health Plan*, No. 18-16769

BEA, Circuit Judge, dissenting:

The majority reverses the district court's third dismissal of this case because it concludes NorthBay plausibly alleged "causal antitrust injury" for claims against the Kaiser Defendants under the anti-monopolization provision of the Sherman Act, 15 U.S.C. § 2. In my view, the majority errs by sidestepping governing law on two essential elements of "causal antitrust injury": (1) that the defendant's conduct be unlawful and (2) the proximate cause requirement that the plaintiff participate in the market the defendant is allegedly monopolizing. NorthBay's final amended complaint failed adequately to allege these elements as required by law and should be dismissed. I respectfully dissent from the majority's contrary disposition.

## I.

The majority reads two *theories* alleged in NorthBay's third and final complaint as alleging sufficient *facts* to plead unlawful conduct on the part of the Kaiser Defendants. First, NorthBay alleges that Kaiser abused its physicians' emergency routing privileges to "steer" *insured* patients away from NorthBay's hospitals in Solano County, California, and to "steer" *uninsured* patients to NorthBay's hospitals. Second, NorthBay claims that Kaiser violated California law by refusing to reimburse NorthBay at reasonable rates for emergency care

provided to Kaiser insurance subscribers. Properly understood, however, these allegations are legal conclusions that claim Kaiser violated the law, rather than factual allegations of what Kaiser did, so to render NorthBay's claims of steering and underpaying reimbursement plausible as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Because NorthBay failed to carry its burden of supporting each theory of unlawful conduct with allegations of fact, I would affirm the dismissal of the complaint.

To survive a motion to dismiss, plaintiffs must push their claim across "the line between possibility and plausibility" by alleging facts that are more than "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). It is well established, as the district court recognized, that courts must presume the truth of factual allegations when deciding a motion to dismiss. But it is equally well established that the presumption of truth "is inapplicable to legal conclusions," no less to "a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

NorthBay alleges that the Kaiser Defendants engaged in two forms of unlawful conduct to accomplish a conspiracy to monopolize the Solano County health insurance market. The majority concludes each of the two claims of lawbreaking are factual allegations that render NorthBay's antitrust claim plausible as a collective whole. Maj. Op. 3–4. Yet accusations that another party has broken

2

the law are quintessentially legal claims, and legal claims require supporting factual allegations to survive a motion to dismiss. Plaintiffs may not impose on a defendant the substantial costs of discovery by pleading multiple claims under the same statutory cause of action and arguing each makes the other plausible. The problem the district court identified in NorthBay's final complaint is not, as my colleagues put it, that NorthBay's assertions are "fanciful." The problem is that NorthBay's theories of unlawful conduct are independent legal claims that lack supporting facts. *See Twombly*, 550 U.S. at 555–57. The legal claim that a defendant trespassed by disposing of waste on a plaintiff's land, for example, must be supported by factual allegations that the defendant drove his truck onto the property and dumped waste thereon; alleging mere trespass is an accusation, not a well pleaded complaint entitling the plaintiff to discovery. "Steering" and "underpaying" are, like "disposing," conclusions or claims, not allegations of fact.

First, NorthBay claims that the Kaiser Defendants abused their physicians' emergency routing privileges by steering lucrative insured patients to Kaiser hospitals and steering uninsured patients to NorthBay hospitals. As the district court correctly noted, NorthBay's complaint is devoid of factual allegations capable, if proven, of establishing the steering claim. Kaiser Vacaville, one of the hospitals operated by the Kaiser Defendants, is the only "Level II" trauma center in Solano County certified to treat severe emergency injuries. When a routing

physician identifies a patient's injury as "Level II" rather than the less serious designation of "Level III," the patient, insured or not, generally must be transported to a "Level II" hospital even if the "Level III" trauma center were closer. NorthBay fails to allege specific instances in which Kaiser physicians directed emergency personnel to transport insured patients to a more distant Kaiser facility or uninsured patients near a Kaiser facility to a more distant NorthBay facility, or that such directions cannot be explained by the physicians' remote evaluation of the severity of the patient's injury.

NorthBay includes specific allegations in its complaint that do nothing to make the steering allegations more plausible. For example, NorthBay alleges that its hospitals posted lower revenues, treated more uninsured patients, and treated fewer emergency trauma patients in 2017 than 2016. But these statistics are at best consistent with misconduct by the Kaiser Defendants and are more plausibly explained by ordinary competitive activity and market conditions, including fluctuation in the number of "Level III" trauma patients NorthBay was eligible to receive as compared to "Level II" patients only Kaiser might receive. *See Twombly*, 550 U.S. at 566 (finding no plausible suggestion of antitrust conspiracy where "nothing in the complaint intimates … anything more than the natural, unilateral reaction" of each market player). NorthBay does not allege specific facts to build on a single unsourced and undated allegation in its complaint that the

4

Kaiser Defendants "instructed" local fire department paramedics to steer insurance subscribers towards Kaiser facilities. *See id.* at 564 (discounting "a few stray statements" in a complaint when "on fair reading [they] are merely legal conclusions resting on the prior allegations"). Who, what, where, and when are left to the imagination. In fact, far from alleging instances in which paramedics complied with suspect instructions by the purported doctor-conspirators in charge of routing ambulances, NorthBay cited examples of paramedics ignoring routing instructions in favor of their own judgment as to where patients should be delivered.

Nor does NorthBay allege a number or pattern of "Level III" injuries at locations close to NorthBay hospitals that were nevertheless directed by the defendants' physicians to Kaiser hospitals. Instead, NorthBay's complaint recites one incident of alleged steering in which a Kaiser physician directed an ambulance carrying a Kaiser subscriber to a Kaiser hospital, and another in which Kaiser transferred one homeless patient to a NorthBay facility. In the first, NorthBay fails to link the incident with general steering practices on Kaiser's part or to make a monopolization scheme more plausible than obvious alternative explanations, such as the physician's confusion about the ambulance's location, the severity of the patient's injury, or the patient's own preference to be treated at a Kaiser facility. In the second, the incident involved a post-admission transfer from one

5

facility to another rather than emergency routing. In any case, the patient in question was in fact insured through Medi-Cal.

This is thin gruel indeed upon which to attempt to shirk the duty to investigate before suing, and thereby seek to open the door to expensive and, perhaps, unjustified discovery which the Supreme Court sought to stanch with its decisions in *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Twombly*, 550 U.S. at 558–59 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. …[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment] proceedings.").

Second, NorthBay claims that the Kaiser Defendants violated California law by reimbursing NorthBay at unreasonable rates for out-of-network emergency services provided to Kaiser subscribers. *See* Cal. Health & Safety Code § 1317.2a(d) (requiring third party payor to pay "reasonable charges" to the transferring hospital). NorthBay's complaint again fails to allege facts capable of proving a violation of the law, such as allegations that Kaiser's reimbursements fall below industry custom or that Kaiser knowingly reimburses for less than NorthBay's actual costs contrary to practice in the State.

6

NorthBay argues its allegation that Kaiser's reimbursement rates are below NorthBay's stated rates alleges a violation of California law. A litigant's stated rates are not controlling, however, because California does not define the reasonableness of rates by "what the provider unilaterally says its services are worth." *Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260, 1275 (2014). Nor does it matter that Kaiser terminated a 2010 agreement with NorthBay that had offered higher reimbursement rates since NorthBay does not allege the termination was itself unlawful. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.").[1]

II.

Although the failure to allege unlawful conduct by the Kaiser Defendants is

---

[1] The unlawful conduct requirement bleeds into another essential element of a monopolization claim under Section 2 of the Sherman Act: "willful acquisition or maintenance" of monopoly power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Linkline*, 555 U.S. at 448 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). The Kaiser Foundation Health Plan's dominant market position in the Solano County health insurance market makes Kaiser an unlawful monopolist only if NorthBay alleges its monopoly position is maintained unlawfully. The failure to allege unlawful conduct as the cause of Kaiser's market success defeats both the "causal antitrust injury" and the "willfully acquired and maintained" elements of NorthBay's monopolization claim.

7

sufficient reason to dismiss this case, my colleagues further err by anticipatorily holding NorthBay adequately alleged proximate cause, another element of "causal antitrust injury," even though the district court did not resolve this issue. Congress implicitly limits the scope of private rights of action according to the common law principle embodied in the concept of proximate cause: that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step" in the causal chain. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983) (quoting *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918)). In the antitrust context, plaintiffs must allege that the defendant's anti-competitive scheme proximately caused injury to the plaintiffs by targeting a market in which they are direct participants for monopolization. *See id.* at 539; *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

Here, NorthBay alleged that the Kaiser Defendants' unlawful conduct toward NorthBay was intended to damage a health insurance company, Western Health Advantage. As a *healthcare services* provider—a hospital—NorthBay is not a participant—an insurer—in the *health insurance* market that it alleges the Kaiser Defendants seek to monopolize. NorthBay is a seller of medical services, not a seller or a buyer of medical insurance policies used to purchase medical services. Had the district court not already decided to dismiss the complaint for

8

failure to allege other elements of "causal antitrust injury," NorthBay's failure to allege market participation by NorthBay in the health insurance market would have, and does, warrant dismissal.

Relying on *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), the majority nevertheless holds that NorthBay's complaint sufficiently alleged proximate cause because NorthBay's injuries are "inextricably intertwined" with those inflicted on Western, a competitor of Kaiser Foundation Health Plan in the local health insurance market. Maj. Op. 7–8. Western treats NorthBay's hospitals as "in network," meaning Western subscribers pay significantly less than market rates for healthcare provided at NorthBay facilities, under preexisting contractual arrangements. This causation theory asserts that the Kaiser Defendants targeted NorthBay with their unlawful steering and underpaying of reimbursement conduct so that NorthBay will reduce services and future service expansion and make Western's health insurance plans less attractive to potential subscribers. By accepting this causal chain as sufficient to allege proximate cause, the majority commits two serious errors.

The first error is that *McCready* did not abrogate the requirement that an antitrust plaintiff participate in the market he claims is being monopolized by the defendant. *McCready* involved an antitrust suit by the beneficiary of a group health insurance plan. The plaintiff beneficiary of a health plan claimed the insurer

9

conspired to restrain competition in the psychotherapy market by reimbursing beneficiaries for treatment by psychiatrists but not for comparable treatment by psychologists, and injured her (and members of her putative class) by depriving would-be patients of psychologists' services. The Supreme Court held that consumers like the plaintiff who participate *in the same market* as the competitors targeted by the defendants' anticompetitive scheme could sue the alleged wrongdoers because the alleged anticompetitive harms were "borne *directly* by the customers of the competitors." 457 U.S. at 483 (emphasis added). In other words, in *McCready* the beneficiaries were marketplace participants in the psychotherapy market capable of suffering direct antitrust injury consistent with proximate cause principles. By contrast here, NorthBay is neither directly providing nor directly consuming health insurance benefits.

*McCready* elaborated on but did not replace the marketplace participant requirement, as the Supreme Court and this court have recognized on multiple occasions. *See, e.g.*, *Associated Gen. Contractors*, 459 U.S. at 529 n.19 (noting that in *McCready* "the actual plaintiff was directly harmed by the defendants' unlawful conduct"); *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (rejecting the argument that *McCready* eliminated the market participant requirement). This court has previously rejected the notion that plaintiffs may recover for antitrust violations in

10

a *different* market.  *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained.  Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."); *Legal Economic Evaluations, Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951, 956 (9th Cir. 1994) (rejecting extension of *McCready* where "the asserted harm to competition takes place in different markets").[2]  NorthBay, a healthcare services provider, did not allege it participates in the health insurance market at the center of this case.  The majority is wrong to assume *McCready*'s permissive definition of marketplace participant includes plaintiffs operating in an entirely different market.

The second error is that the majority assumes proximate cause is satisfied whenever injury to the plaintiff in one market *could* harm an affiliated third party in a different market subject to the defendant's alleged antitrust scheme.  Maj. Op. 8.  That is not so.  As the Supreme Court explained in *McCready*, proximate cause

---

[2] The majority cites a footnote in *American Ad Management* stating that *McCready* "carved a narrow exception to the marketplace participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants."  Maj. Op. 7 (quoting 190 F.3d at 1057 n.5).  As in *McCready*, however, *American Ad Management* allowed antitrust claims to proceed because the relevant market included the plaintiffs.  *American Ad Management* did not, and could not have, extended *McCready* into a freestanding exception to the marketplace participation requirement after the Supreme Court and the Ninth Circuit had refused to do the same.

11

requires a *direct* causal relationship between injury to the plaintiff and antitrust injury to the targeted third party. Plaintiffs may sue under the antitrust laws when their injury is "the very means" by which a defendant sought to injure his competitors, such that the parties' injuries are "inextricably intertwined." 457 U.S. at 479. It is not enough to allege an indirect chain of causation where one or more intervening causes may control whether the plaintiff's injury will translate into an antitrust injury to competitors in the defendant's targeted market. *See, e.g.*, *Associated Gen. Contractors*, 459 U.S. at 540 (rejecting antitrust claim where "the chain of causation between the Union's injury and the alleged restraint in the market … contains several somewhat vaguely defined links"); *cf. Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharma. Co.*, 943 F.3d 1243, 1257 (9th Cir. 2019) (allowing suit against drug manufacturer despite physician intermediaries because the drug "was *required* to be prescribed by physicians" for the scheme to succeed).

By NorthBay's own account, "the very means" by which the Kaiser Defendants sought to pressure Western out of the health insurance market are not the alleged steering and underpaying reimbursement practices, but the effect of NorthBay's own choices about whether and when to invest in patient services. NorthBay's complex financial decision-making processes, based on multiple assumptions and predictions made apart from any intervention by Kaiser, sever the

12

legal relationship between Kaiser's alleged unlawful conduct toward NorthBay and resulting injury to Western in the health insurance market. To use a pool example, this means the difference between hitting the cue ball on a straight shot that sinks the eight-ball into the pocket as opposed to sending the cue ball careening into the racked billiard balls at the beginning of the game, when the eight-ball is nestled in the middle of the racked balls, and hoping for the best. The former outcome is direct causation; the outcome of the latter is famously beyond ordinary human ability accurately to predict. Like the multiple assumptions and predictions of NorthBay, the balls racked around the eight-ball sever the proximate causal relationship between the cue ball and the eight-ball, which may, or may not, end up in the side pocket by the effort of the player.

By choosing to litigate this case on the theory that the Kaiser Defendants sought to monopolize the health insurance market in which the two parties are not direct competitors, NorthBay set for itself an uphill climb on the element of proximate cause. The majority is wrong to push NorthBay over the top by unmooring *McCready* entirely from the market participant rule.

*       *       *

NorthBay failed to nudge its theories of "causal antitrust injury" "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Because the majority recasts NorthBay's legal claims as factual

13

allegations and decides the proximate cause issue contrary to binding precedent,

I respectfully dissent.